UNITED STATES of America

v.

Frank D. WUTERICH, Staff Sergeant (E–6), U.S. Marine Corps.

NMCCA 200800183.

U.S. Navy–Marine Corps Court of Criminal Appeals.

31 Aug. 2009.

For Appellant: LT Timothy H. Delgado, JAGC, USN.

For Nominal Appellee: Col Dwight H. Sullivan, USMCR; Maj Christian J. Broadston, USMC; LT Kathleen L. Kadlec, JAGC, USN.

For Non–Party Appellee: Lee Levine, Seth D. Berlin, and Nicole Auerbach.

O'TOOLE, C.J., delivered the opinion of the court in which GEISER, and VINCENT, S.JJ., concur. MAKSYM, J., delivered an opinion joined by STOLASZ, J., concurring. PERLAK, J., delivered an opinion joined by BOOKER, S.J., and BEAL, J., concurring in the result. MITCHELL, S.J., PRICE, and CARBERRY, JJ., did not participate in the decision of this case.

O'TOOLE, Chief Judge.

This case is before us a second time on a Government interlocutory appeal, brought pursuant to Article 62, Uniform Code of Military Justice, 10 U.S.C. § 862, and RULE FOR COURTS-MARTIAL 908, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.). The Government contends that the military judge erred as a matter of law when he quashed a Government subpoena for material in the possession of CBS Broadcasting Inc. ("CBS"), including an audio-video interview with Staff Sergeant (SSgt) Wuterich (appellee). The military judge held that a First Amendment "reporter's privilege" applied to the material, and that the Government had failed to overcome CBS's assertion of that privilege.

This case presents a matter of first impression: the existence and application of a reporter's privilege in military jurisprudence.[1] Our multi-part analysis examines: first, whether a reporter's privilege applies in military courts-martial under the First Amendment, U.S. CONST. amend. I, and MILITARY RULE OF EVIDENCE 501(a)(1), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.); second, whether a reporter's privilege applies in military courts-martial under MIL. R. EVID. 501(a)(4) as a principle of common law generally recognized in the trial of criminal cases in the United States district courts pursuant to Federal Rule of Evidence 501; and third, whether the military judge erred in his application of a reporter's privilege in quashing the Government's subpoena for non-confidential material, notwithstanding his finding that the material satisfied R.C.M. 703.

We have considered the record of proceedings to date, the pleadings of the Government, the appellee, and non-party CBS, as well as the outstanding oral arguments of 25 June 2009.[2] For the reasons set forth in our opinion below, we hold that the facts presented in this case do not support the recognition of a reporter's privilege under the Military Rules of Evidence, and that the military judge, therefore, erred as a matter of law in quashing the Government's subpoena.

**Background**

The appellee is charged with dereliction of duty, voluntary manslaughter, aggravated assault, reckless endangerment, and obstruction of justice, in violation of Articles 92, 119, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 919, 928, and 934. The charges against the appellee arise out of his alleged actions during combat operations at or near Haditha, Iraq, on 19 November 2005, following an improvised explosive device ("IED") attack on his military convoy. The charges allege, *inter alia*, that the appellee killed or participated in the killing of 24 civilian men, women, and children.

Following the IED attack and its aftermath, the appellee made at least three statements regarding his actions and those of his squad. On 21 February 2006, the appellee made a sworn statement to the military officer assigned to investigate the events of 19 November 2005. Appellate Exhibit L at 704. Later, the appellee participated in an interview of several hours duration with CBS news correspondent Scott Pelley. Portions of that interview were broadcast on 18 March 2007, as a *60 Minutes* report titled "The Killings in Haditha; Staff Sergeant Frank Wuterich discusses what the Marines did the day 24 Iraqi civilians were killed." AE LVII at 28–35. Finally, on 6 September 2007, the appellee made an unsworn statement during

---

1. The Government refers to the privilege at issue as a "newsgathering privilege," as has our superior court and some other federal courts. Government Brief of 20 Apr 2009 at 1; *United States v. Wuterich*, 67 M.J. 63, 79 (C.A.A.F.2008), *petition for cert. filed sub nom. Wuterich v. United States*, No. 08–1133 (Mar. 10, 2009); *see In re Fitch, Inc.*, 330 F.3d 104, 106 (2d Cir.2003). We will employ the term "reporter's privilege" because it is used interchangeably with "newsgathering privilege," and it appears to be the more generally recognized term, used by the United States Supreme Court, the majority of federal courts, and CBS in its pleadings. CBS Brief of 11 May 2009 at 1; *see Branzburg v. Hayes*, 408 U.S. 665, 698, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *United States Dep't of Education v. National Collegiate Athletic Association*, 481 F.3d 936, 938 (7th Cir.2007); *The New York Times Company v. Gonzales*, 459 F.3d 160, 162 (2d Cir.2006).

2. The Government and non-party CBS participated in the oral argument. The appellee did not, having filed a Notice of Non–Participation.

an Article 32, UCMJ, investigation. *Id.* at 47–65.

On 16 January 2008, the Government issued a subpoena to CBS, pursuant to R.C.M. 703, seeking all of the recorded material from the *60 Minutes* interview with the appellee, including the "outtakes."[3] *Id.* at 25. CBS provided the broadcast segment of *60 Minutes* to the Government, and moved to quash the subpoena under R.C.M. 703(f)(4)(C), to the extent that it included the background interview "outtakes" which had not been broadcast. AE L at 630. The military judge, without first reviewing the contested material, held that it did not meet the necessity required by R.C.M. 703(f)(1), and granted the CBS motion to quash. That initiated the Government's first interlocutory appeal.

In our first consideration of this case, we held that the military judge erred in quashing the Government subpoena without first conducting an *in camera* review of the outtakes at issue. *United States v. Wuterich,* 66 M.J. 685, 690 (N.M.Ct.Crim.App.2008). Though vacating our opinion on other grounds, the Court of Appeals for the Armed Forces (CAAF) agreed with our conclusion that an *in camera* review by the military judge was necessary before he could dispose of the motion to quash. *Wuterich,* 67 M.J. at 79. The CAAF remanded the case for further consideration by the military judge. *Id.*

CBS produced the outtakes for the military judge on 11 March 2009. Record at 20. They included eight digital versatile discs (DVDs), each of approximately 30 minutes duration. Following *in camera* review of the DVDs, the military judge found that three of the eight satisfied the requirements of R.C.M. 703(f)(1). *Id.* at 52. The military judge characterized the material on the DVDs labeled 3A, 4A, and 8A as cumulative in the aspect that they were consistent with other evidence, and then held that these three DVDs met the R.C.M. 703(f)(1) requirements of relevance and materiality. *Id.*

The military judge next held that a qualified reporter's privilege applied to military courts-martial, and that this privilege protected the outtakes from Government subpoenas. *Id.* at 51, 53 (citing *United States v. Caporale,* 806 F.2d 1487 (11th Cir.1986), *United States v. Burke,* 700 F.2d 70 (2d Cir.1983), and *United States v. Cuthbertson,* 630 F.2d 139 (3d Cir.1980)). The military judge went on to articulate that, in order to overcome this privilege, the Government must demonstrate the material sought by the subpoena is highly material and relevant, necessary or critical to the Government's case, and not obtainable from other sources. *Id.* at 53. Applying this test to the three DVDs he had already found satisfied R.C.M. 703(f)(1), the military judge concluded that, although highly material and relevant, the DVDs were not critical to the Government's case, because they contain information already represented in statements possessed by the Government. Thus, he concluded, the information is obtainable from other sources.[4] *Id.* The military judge then quashed the Government subpoena a second time. The Government again appealed.

### Jurisdiction

#### The Law of the Case

In its treatment of this case, the CAAF determined that the Government's appeal falls within the ambit of our Article 62, UCMJ, jurisdiction. *Wuterich,* 67 M.J. at 79. Absent an overruling of that prior decision in this case, we are bound by the CAAF's determination. CBS nevertheless asserts that such jurisdiction does not extend to a mili-

3. Specifically, the Government subpoena to CBS ordered the delivery of "ny and all video and/or audio tape(s), to include out-takes and raw footage, of any and all interviews and/or statements, oral comments, and/or oral communications or nonverbal acts, actions, and/or acknowledgments made by Staff Sergeant Frank D. Wuterich, United States Marine Corps, recorded by or for, or in the possession of CBS News, 60 Minutes, and/or any associate or division of CBS Inc...." AE LVII at 25.

4. The military judge concluded the remaining five DVDs did not satisfy R.C.M. 703(f)(1). He held they were irrelevant, immaterial, and cumulative. As a result, the military judge did not address whether those DVDs would be subject to a reporter's privilege. *Id.* at 51–52. The Government has not appealed as to these DVDs, and we decline to address them.

tary judge's ruling quashing a subpoena.[5] CBS Answer at 1–2; AE L at 320–37. That issue, which CBS wishes to preserve for later adjudication, is not within our cognizance given the procedural status of the case before us. Therefore, consistent with the ruling of the CAAF in this case, we conclude that we have jurisdiction to consider the Government's interlocutory appeal under Article 62, UCMJ.

### Article 62, UCMJ, Jurisdiction

■ Leaving aside for the moment the law of this case and its larger precedential impact, we conclude that the legislative history of Article 62 and the CAAF opinions interpreting it establish that "Article 62 was intended by Congress to be interpreted and applied in the same manner as the federal Criminal Appeals Act, 18 U.S.C. § 3731." *United States v. Brooks*, 42 M.J. 484, 486 (C.A.A.F.1995). *See United States v. Lincoln*, 42 M.J. 315, 320 (C.A.A.F.1995). In further explanation of our position, we adopt with approval the analysis of our predecessor panel:

> In other words, Article 62 ensures that the Government has the same opportunity to appeal adverse trial rulings that the prosecution has in federal civilian criminal proceedings. *United States v. Lopez de Victoria*, 66 M.J. 67, 71 (2008). The federal Criminal Appeals Act permits the United States to appeal orders "suppressing or excluding" evidence in criminal cases where "the evidence is substantial proof of a fact material in the proceeding." 18 U.S.C. § 3731. There is no military case law addressing whether the Government may appeal a decision of the military judge to quash a Government subpoena issued to

a non-party. There is significant case law from Article III Courts that have interpreted and applied 18 U.S.C. § 3731. Since Article 62, UCMJ, is intended to parallel that statute, we may look to the federal courts for guidance in interpreting our jurisdictional authority.

Article III courts have broadly construed the scope of 18 U.S.C. § 3731 by utilizing an "effects" test.[6] This test focuses on the effect of a court order or ruling rather than its facial categorization or title. *United States v. Margiotta*, 662 F.2d 131 (2d Cir.1981); *United States v. Humphries*, 636 F.2d 1172, 1175 (9th Cir. 1980). In *United States v. Smith*, 135 F.3d 963 (5th Cir.1998), the United States Court of Appeals for the Fifth Circuit was presented with a Government appeal in which the facts and issues were almost identical to those in the case at bar. In *Smith*, the United States sought a subpoena for the production of a videotaped interview of a criminal defendant conducted by a local television station. That television station moved to quash the subpoena on First Amendment grounds, claiming a "news reporter's privilege." The district court quashed the subpoena, and the Government appealed. In concluding it had jurisdiction to decide the matter, the Fifth Circuit held that § 3731 "provides the government with as broad a right to appeal as the Constitution will permit." *Smith*, 135 F.3d at 967 (citing *United States v. Wilson*, 420 U.S. 332, 337, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975)). The court of appeals specifically found it had jurisdiction pursuant to the federal statute because the district court order quashing the subpoena

---

5. CBS notes that the jurisdictional issue in this case is currently the subject of a petition for a writ of *certiorari* to the United States Supreme Court. CBS Answer at 1.

6. This court and our superior court have both applied what amounts to an "effects" test in determining jurisdiction to hear appeals under Article 62, UCMJ, but not in the context of an appeal of a military judge's order to quash a Government subpoena. *See United States v. Taylor*, 60 M.J. 720 (N.M.Ct.Crim.App.2004)(military judge's imposition of a sanction against the Government [preventing the Government from presenting the testimony of a confidential witness] if

the Government refused to disclose evidence the military judge determined to be relevant and material "was the functional equivalent of an order excluding evidence"); *United States v. True*, 28 M.J. 1 (C.M.A.1989)(military judge's abatement order, issued when the Government refused to pay for expert investigative assistance for the defense [after the military judge granted a defense request for such assistance] was the "functional equivalent" of a ruling that terminated the proceedings of the court-martial). Here, barring the Government from obtaining the evidence sought functionally prevents the Government from presenting that evidence at trial.

effectively " 'suppresses or excludes evidence' in a criminal proceeding" in which "the relevant United States Attorney 'certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is substantial proof of a fact material in the proceeding in a criminal proceeding.' " *Id.*

Though there is a difference in the wording of Article 62, UCMJ, and its federal civilian counterpart, we find no discernible difference between the effect of the term "suppress" and the term "exclude" as applied to evidence; the effect of both is to deprive the Government of the evidence sought, and its use at trial. More importantly, to limit our jurisdiction based on this minor difference in terms would create a significant discrepancy between when jurisdiction vests in the Article III courts of appeal and in the military appellate courts—a result that would clearly be contrary to the intent of Congress. *Brooks,* 42 M.J. at 486.

Finally, to invoke jurisdiction under § 3721, the relevant United States Attorney must certify that a federal appeal is taken because the evidence excluded is substantial proof of a material fact. The military system differs in process, but includes essentially the same requirement. Government appeals must be perfected pursuant to the Rules for Courts–Martial, under which the trial counsel must certify that the evidence excluded is substantial proof of a fact material to the proceeding. RULE FOR COURTS-MARTIAL, 908(b)(3), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed). As well, the Judge Advocate General or his designee must decide whether to file the appeal. R.C.M. 908(c)(6). Thus, we need not be distracted by a preliminary determination of whether the evidence sought is both substantial and material; the certification by the trial counsel and the decision of the Judge Advocate General to perfect this appeal are sufficient to invoke jurisdiction as effectively as does the certification of a United States Attorney under the Criminal Appeals Act.

*Wuterich,* 66 M.J. at 687–88 (footnote in original).

Accordingly, under the facts of this case, in which the military judge has already ruled the disputed evidence is "highly material and relevant," we hold that, irrespective of the CAAF decision returning this matter to us, this court would have jurisdiction under Article 62(a)(1)(B), UCMJ, to adjudicate the Government appeal challenging the military judge's order to quash the Government subpoena for the disputed evidence.

### Standard of Review

In disposing of a Government interlocutory appeal under Article 62, UCMJ, we are limited to *de novo* review of matters of law. R.C.M. 908(c)(2); *see also United States v. Cossio,* 64 M.J. 254, 256 (C.A.A.F.2007). Absent a holding that the military judge abused his discretion in making his findings of fact, we are bound by those findings and may not substitute our own interpretation of the facts. *Cossio,* 64 M.J. at 256 (citing *United States v. Mizgala,* 61 M.J. 122, 127 (C.A.A.F.2005)). However, before accepting the military judge's findings of fact, we must discern whether those findings are "arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Rodriguez,* 57 M.J. 765, 770 (N.M.Ct.Crim.App.2002), *aff'd,* 60 M.J. 239 (C.A.A.F.2004).

To begin, there are no material factual issues in dispute. Neither party contests the findings of the military judge that the appellant participated, with his counsel present, in several hours of interview with a CBS news producer. There is no dispute that the interview was recorded on a series of DVDs, and that a *60 Minutes* broadcast was derived from the larger interview. There is no dispute that the appellant has given at least two other statements, and that other witnesses, including those in his squad, have also provided statements. With respect to the DVDs, the military judge's findings include a brief, general description of the material contained in the DVDs labeled 3A, 4A, and 8A. His descriptions, though brief, are not clearly unreasonable.[7] We, therefore, accept these

---

7. We do not intend criticism of the military judge's generalized description of the DVDs. It

findings as a general description of the disputed DVD content. Regardless, the issue on appeal does not turn on a factual determination, but on the military judge's legal conclusions regarding the discoverable nature of the DVDs, and on his application of a reporter's privilege to them.

## Analysis

### Privileges Under MIL. R. EVID. 501

Article 36, UCMJ, 10 U.S.C. § 836, provides that the President "shall, so far as he considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts, but which may not be contrary to or inconsistent with [the procedures of courts-martial]." *See United States v. Rodriguez,* 54 M.J. 156, 157 (C.A.A.F.2000). In promulgating specific rules and privileges, "the purpose of the Military Rules was to provide predictability, clarity, and certainty through specific rules rather than a case-by-case adjudication of what the rules of evidence would be." *Rodriguez,* 54 M.J. at 158. Whereas the Federal Rules of Evidence essentially apply those privileges recognized in common law, it was "deemed [that] the approach taken by Congress in the Federal Rules [was] impracticable within the armed forces." Drafter's Analysis of MIL. R. EVID. 501 at A22–38. Military justice demands greater clarity as to what material is privileged, and what is not, an assessment that resulted in the enumeration of the privileges found in MIL. R. EVID.,[8] Section V. *Id.*

It is in view of this landscape that the CAAF has cautioned against expansively interpreting MIL. R. EVID. 501 to include privileges unenumerated by the President, notwithstanding the "modest degree of flexibility in the application of federal common-law" or constitutionally rooted privileges permitted by MIL. R. EVID. 501(a)(1) and 501(a)(4). *Rodriguez,* 54 M.J. at 158; *see*

also *United States v. Custis,* 65 M.J. 366, 370–71 (C.A.A.F.2007). Military courts have "been provided with a comprehensive set of evidentiary rules with regard to privileges and the exceptions thereto." *Custis,* 65 M.J. at 370. Generally, "under our system, it is for the policymaking branches of government to weigh the utility of ... [privileges and exceptions] against the truth seeking function of the court-martial and, if appropriate, make adjustments...." *Id.* at 371. This approach to privileges in military jurisprudence reflects the United States Supreme Court's observation that "whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

The President has not expressly recognized a reporter's privilege in MIL. R. EVID. 501. *See United States v. Davis,* 61 M.J. 530, 533 (Army Ct.Crim.App.2005)(citing *Rodriguez,* 54 M.J. at 160–161, for the proposition that "application of the federal common-law of evidentiary privilege to courts-martial is more likely to be 'contrary to or inconsistent with' military practice when the President has 'occupied the field' by express enactment of a comprehensive rule of privilege"). It is in the context of this state of the law—mindful of the rules articulated by the President, and the caution, if not restraint, counseled by the Supreme Court and the CAAF—that we turn to consider whether, or to what extent, a reporter's privilege is applicable to courts-martial, either as required by the Constitution, or as generally recognized in common law. MIL. R. EVID. 501(a)(1) and 501(a)(4); *see also Wuterich,* 67 M.J. at 79.

### Reporter's Privilege Under MIL. R. EVID. 501(a)(1)

While the military judge based his application of a reporter's privilege upon MIL. R.

---

seems clear that he limited his recitation of content to preserve the confidentiality of his *in camera* review. His description however, does not require us to ignore the actual content of the DVDs.

**8.** "Unlike the Article III court system, which is conducted almost entirely by attorneys functioning in conjunction with permanent courts in

fixed locations, the military criminal legal system is characterized by its dependence upon large numbers of laymen, temporary courts, and inherent geolineartal and personnel instability due to the worldwide deployment of military personnel. Consequently, military law requires far more stability than civilian law." Drafter's Analysis of MIL. R. EVID. 501 at A22–38.

EVID. 501(a)(4), CBS argues that recognition of the privilege is rooted in the First Amendment to the United States Constitution and, by extension, MIL. R. EVID. 501(a)(1).[9] CBS Brief at 26–33. We disagree.

We look first to the plain language of MIL. R. EVID. 501(a)(1). *See United States v. James,* 63 M.J. 217, 221 (C.A.A.F.2006). That rule states, in pertinent part: "[a] person may not claim a privilege with respect to any matter except as required by or provided for in ... [t]he Constitution of the United States as applied to members of the armed forces." MIL. R. EVID. 501(a)(1). We note that the terminal phrase "as applied to members of the armed forces" appears to explicitly limit the rule to those privileges that apply to members of the armed forces. *See James,* 63 M.J. at 221 (quoting *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992))("A fundamental rule of statutory interpretation is that 'courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'"). However, we decline to comment on the practical effect of that language, as neither the CBS argument, nor our decision in this case, hinges on a distinct application of the Constitution to the armed forces. Rather, both hinge on the constitutional stature of the privilege asserted by CBS.

CBS argues that the reporter's privilege is of such significance that it rises to the level of being "required by or provided for" in the constitution. Such a constitutionally based privilege would arguably be incorporated into the Military Rules of Evidence through MIL. R. EVID. 501(a)(1); and, even if the privilege is not anticipated by that rule, CBS argues such a privilege may not be foreclosed by the failure of such a regulation to explicitly incorporate it. CBS Answer at 28. The legal validity of this two-part argument depends upon whether the privilege being asserted by CBS is of such constitutional stature as to at least be "required." We, therefore, turn to

an examination of whether there exists such a First Amendment-based reporter's privilege.

### Broad First Amendment–Based Reporter's Privilege

■ The First Amendment, of course, makes no explicit mention of a reporter's privilege in either the federal courts or in military courts-martial. It provides simply that "Congress shall make no law ... abridging the freedom of speech, or of the press." U.S. Const. amend. I. To determine if the prohibition on abridging freedom of the press extends to requiring recognition of a reporter's privilege, we look to constitutional jurisprudence. The United States Supreme Court has held that "neither [reporter nor source] is immune, on *First Amendment* grounds, from testifying against the other, before the grand jury or at a criminal trial." *Branzburg v. Hayes,* 408 U.S. 665, 691, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)(emphasis in original). According to the majority of the Court, at that time "the only testimonial privilege for unofficial witnesses that is rooted in the Federal Constitution is the Fifth Amendment privilege against compelled self-incrimination." *Id.* at 690, 92 S.Ct. 2646. The Court then declined to recognize a broad, constitutionally based reporter's privilege. *Id.* at 690–91, 92 S.Ct. 2646.

*Branzburg* involved a consolidated appeal by three reporters who faced grand jury subpoenas seeking information obtained from confidential sources. *Id.* at 667–79, 92 S.Ct. 2646. The Court determined that the First Amendment does not protect a reporter from supplying information to the criminal justice system. *Id.* at 697, 92 S.Ct. 2646. According to the Branzburg Court, "the right to withhold news is not equivalent to a First Amendment exemption from the ordinary duty of all other citizens to furnish relevant information to a grand jury performing an important public function." *Id.* We are unpersuaded by CBS's attempts to minimize the impact of *Branzburg.*[10] CBS Brief at 20–

---

9. *See Dandridge v. Williams,* 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)("[t]he prevailing party may, of course, assert in a reviewing court any ground in support of his judg-

ment, whether or not that ground was relied upon or even considered by the trial court.").

10. CBS also contends that, given his presence in the 5–4 majority, Justice Powell's concurrence in

25. *Branzburg* represents the Supreme Court's sole consideration of the reporter's privilege, and the Court declined to recognize it as a broadly based First Amendment protection.[11]  408 U.S. at 689, 92 S.Ct. 2646. We conclude that *Branzburg* is controlling precedent on this aspect of our analysis. We, therefore, must adhere to the conclusion in *Branzburg* that there is no broadly based First Amendment reporter's privilege.

Nevertheless, *Branzburg* was followed by a number of federal district and circuit court opinions that addressed a reporter's privilege, and, under certain circumstances, some courts have granted relief to the party invoking such a privilege. It is with these cases that CBS buttresses its argument that there is a reporter's privilege grounded in the First Amendment. CBS Brief at 15–32. "Grounding" in the First Amendment as a source of some protection under certain circumstances has, indeed, been the basis of the decisions cited by CBS. However, these cases do not support the existence of a broadly based First Amendment privilege, nor of one "required by or provided for" in the Constitution as CBS asserts is recognized by MIL. R. EVID. 501(a)(1). Rather, these cases reflect the incremental development of federal common law as the courts addressed a variety of circumstances, including those under which the Government has improperly burdened the press, and others under which an incidental burden, resulting from the enforcement of criminal laws of general applicability, has been upheld as permissible.

This development of the federal common law may not, and has not, disturbed the

binding precedent articulated in *Branzburg*. The various circuits to consider the issue have properly sought to clarify and balance the competing interests of litigants, including the press, in the absence of a broadly-based First Amendment reporter's privilege. These cases may, therefore, be used to support the analysis anticipated by MIL. R. EVID. 501(a)(4), to determine whether a reporter's privilege is "commonly recognized in the federal criminal courts." To the extent the privilege asserted by CBS is commonly recognized, it may be incorporated into military courts-martial practice. *Id.*

**Reporter's Privilege Under MIL. R. EVID. 501(a)(4)**

■  Before permitting the application of a privilege not specifically provided for in the Military Rules of Evidence, the precept of MIL. R. EVID. 501(a)(4) requires an evaluation of the common law applied in criminal cases before the United States district courts. We initially note that the notion of federal "general" common law has been largely rejected by the United States Supreme Court. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). However, the development of evidentiary privileges has been identified as one of the select "havens of specialty" for which federal courts enjoy "express congressional authorization to devise a body of law directly." *Sosa v. Alvarez–Machain*, 542 U.S. 692, 726, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004). Specifically "[r]ule 501 of the Federal Rules of Evidence authorizes federal courts to define new privileges by interpreting 'common law principles ... in the light of reason and experience'" and

*Branzburg* should be seen as important in limiting the effect of the holding. CBS Brief at 22. However, "Justice Powell's concurring opinion was not an opinion of a justice who refused to join the majority" and "Justice White's opinion is not a plurality opinion of four justices joined by a separate Justice Powell to create a majority, it is the opinion of the majority of the Court" and carries the authority of such. *In re Grand Jury Subpoena, Judith Miller*, 397 F.3d 964, 971 (D.C.Cir.2005); *see also United States v. Smith*, 135 F.3d 963, 969 (5th Cir.1998)("Justice Powell's separate writing only emphasizes that at a certain point, the First Amendment must protect the press from government intrusion"); *In re Grand Jury Proceedings: Storer Communications, Inc.*, 810 F.2d 580, 585 (6th Cir.1987)("It is

readily apparent, then, that Justice Powell's concurring opinion is entirely consistent with the majority opinion, and neither limits nor expands upon its holding").

11.  "Unquestionably, the Supreme Court decided in *Branzburg* that there is no *First Amendment* privilege protecting journalists from appearing before a grand jury or from testifying before a grand jury or otherwise providing evidence to a grand jury regardless of any confidence promised by the reporter to any source. The Highest Court has spoken and never revisited the question. Without doubt, that is the end of the matter." *In re Grand Jury Subpoena, Judith Miller*, 397 F.3d at 970 (emphasis in original).

"[t]he rule thus did not freeze the law governing the privileges of witnesses in federal trials at a particular point in our history, but rather directed federal courts to 'continue the evolutionary development of testimonial privileges.'" *Jaffee v. Redmond,* 518 U.S. 1, 8, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996)(quoting *Trammel v. United States,* 445 U.S. 40, 47, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980)).

It is that evolution we now examine to determine if a "reporter's privilege" is "generally recognized" in the United States district courts. As properly noted by CBS, the formula for determining if a principle is generally recognized is not "mathematical or temporal." CBS Brief at 36. However, a principle must at least be accepted by more than one federal court in order to be considered "generally recognized." *United States v. McCollum,* 58 M.J. 323, 341 (C.A.A.F. 2003); *see also United States v. Smith,* 30 M.J. 1022, 1026–27 (A.F.C.M.R.1990)(finding it persuasive that all but one of the federal circuits recognized the exception at issue), *aff'd,* 33 M.J. 114 (C.M.A.1991).

As a threshold matter, we do not place great weight on the distinction emphasized by both parties between federal circuit and district court case law in our analysis. CBS Brief at 34; Government Reply at 8–9. We would expect a district court's application of a reporter's privilege to be in conformity with that judicial circuit's respective precedent, and generally accept a federal circuit court's ruling as controlling on the district courts over which it exercises appellate jurisdiction. *See Reiser v. Residential Funding Corp.,* 380 F.3d 1027, 1029 (7th Cir.2004).[12] Similarly, we place great weight on the holdings of the United States Supreme Court, and our obligation to either follow or distinguish its precedent. *See United States v. Allbery,* 44 M.J. 226, 228 (C.A.A.F.1996); *see*

*also United States v. Davis,* 47 M.J. 484, 489 (C.A.A.F.1998)(Sullivan, J., dissenting)(referring to this concept as the "follow it or distinguish it rule of precedent").

Moving to the evolution of the case law, we begin once again with *Branzburg.* Contrary to CBS's contention, Supreme Court rulings since this seminal case evince no retreat from its original holding.[13] CBS Brief at 16; *see University of Pennsylvania v. Equal Employment Opportunity Commission,* 493 U.S. 182, 201, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990)(citing *Branzburg* approvingly in rejecting an analogous privilege claim grounded in the First Amendment). Furthermore, CBS's suggestion that the Branzburg Court was influenced by the fact that the reporters in that case were percipient witnesses is not persuasive. CBS Brief at 16 n. 10. While the reporters involved in *Branzburg* were subpoenaed to testify about what they had observed, the petitioner in the final appeal before the Court, *Caldwell v. United States,* 434 F.2d 1081 (9th Cir.1970), was the subject of a subpoena for a reporter's notes and tape recordings of interviews with members of the Black Panther Party. *Branzburg,* 408 U.S. at 675, 92 S.Ct. 2646. Moreover, in the *Branzburg* holding, the Court did not distinguish between percipient reporter witnesses and the non-percipient reporter witnesses. *Id.* Thus, we conclude that *Branzburg* remains undiminished as controlling precedent.

Next, CBS posits that the principles enunciated in *Branzburg* ought to be limited to grand juries given the factual background of that case. CBS Brief at 20. To be sure, we do not ignore the fundamental distinction between a grand jury and a criminal trial, nor the distinct procedural demands of both. *See United States v. Dionisio,* 410 U.S. 1, 17, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973)("Any holding that would saddle a grand jury with minitrials and preliminary showings would

12. "In a hierarchical system, decisions of a superior court are authoritative on inferior courts. Just as the court of appeals must follow decisions of the Supreme Court whether or not [it agrees] with them, so district judges must follow the decisions of [circuit courts] whether or not they agree." *Reiser,* 380 F.3d at 1029 (citations omitted).

13. CBS notes that the Branzburg Court denied *certiorari* in a case in which the reporter's privilege had been recognized in the term following *Branzburg.* CBS Brief at 16. We attribute no significance to this. "[T]he denial of a writ of certiorari imports no expression of opinion upon the merits of the case." *United States v. Carver,* 260 U.S. 482, 490, 43 S.Ct. 181, 67 L.Ed. 361 (1923).

assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws"). However, we find that a fair reading of *Branzburg* and its progeny reveals no support for the argument that its principles are limited to the grand jury.[14] We agree with the 5th Circuit's assessment that "[t]he Branzburg Court gave no indication that it meant to limit its holding to grand jury subpoenas:

'On the records now before us, we perceive no basis for holding that the public interest in law enforcement and in ensuring effective grand jury proceedings is insufficient to override the consequential, but uncertain, burden on news gathering that is said to result from insisting that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation *or criminal trial.*'

*United States v. Smith,* 135 F.3d 963, 971 (5th Cir.1998)(quoting *Branzburg,* 408 U.S. at 690–91, 92 S.Ct. 2646). Indeed, as recently as 2004, the Supreme Court reiterated the application of this principle at criminal trials by holding that "[i]n light of the 'fundamental' and 'comprehensive' need for 'every man's evidence' in the criminal justice system . . . privilege claims that shield information from a grand jury proceeding *or a criminal trial* are not to be 'expansively construed, for they are in derogation of the search for truth.'" *Cheney v. United States Dist. Court,* 542 U.S. 367, 384, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004)(quoting *Nixon,* 418 U.S. at 710, 94 S.Ct. 3090) (citations omitted)(emphasis added).

Yet, "a large number of cases conclude, rather surprisingly in light of *Branzburg,* that there is a reporter's privilege, though they do not agree on its scope." *McKevitt v. Pallasch,* 339 F.3d 530, 532 (7th Cir.2003)(providing a survey of the common law on the reporter's privilege). These include civil and criminal cases in which the matter sought included either confidential or non-confidential information. In civil cases, federal courts have "generally recognized" a reporter's privilege. *See Price v. Time, Inc.,* 416 F.3d 1327, 1343 (11th Cir.2005); *Shoen v. Shoen,* 5 F.3d 1289, 1290–95 (9th Cir.1993); *LaRouche v. National Broadcasting Co.,* 780 F.2d 1134, 1136, 1139 (4th Cir.1986); *Zerilli v. Smith,* 656 F.2d 705, 710–11 (D.C.Cir. 1981); *Bruno & Stillman, Inc. v. Globe Newspaper Co.,* 633 F.2d 583, 584, 593–95 (1st Cir.1980); *Miller v. Transamerican Press,* 621 F.2d 721, 725 (5th Cir.1980); *Riley v. City of Chester,* 612 F.2d 708, 714–18 (3d Cir.1979); *Silkwood v. Kerr–McGee Corp.,* 563 F.2d 433, 437 (10th Cir.1977); *Baker v. F & F Inv.,* 470 F.2d 778, 779, 783–85 (2d Cir.1972); *Cervantes v. Time, Inc.,* 464 F.2d 986, 992–93 (8th Cir.1972).

Recognition of a reporter's privilege in the criminal context, however, has most often been in cases of confidential sources or material. *See United States v. The LaRouche Campaign,* 841 F.2d 1176, 1181 (1st Cir.1988)(observing that "[t]his is because disclosure of such confidential material would clearly jeopardize the ability of journalists and the media to gather information and, therefore, have a chilling effect on speech"). Such a privilege is much less often found to apply as against the subpoena of non-confidential sources or material. Indeed, only four Circuit Courts of Appeal have recognized a "reporter's privilege" in criminal cases involving non-confidential material: the First, Second, Third, and Eleventh Circuits. *See Id.* at 1177–78, 1181–82 (recognizing the reporter's privilege for non-confidential outtakes in a criminal trial, while acknowledging that "when there is no confidential source or information at stake, the identification of First Amendment interests is a more elusive task"); *Caporale,* 806 F.2d at 1504 (applying the reporter's privilege to protect a reporter who refused to testify at a criminal trial as to the then-revealed confidential source of a government leak); *Burke,* 700 F.2d at 76–77 (holding the reporter's privilege to be gener-

---

**14.** "There is no present authority in this Court that a newsman need not produce documents material to the prosecution or defense of a *criminal case, cf. Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), or that the obligation to obey an otherwise valid subpoena served on a newsman is conditioned upon the showing of special circumstances." *New York Times Co. v. Jascalevich,* 439 U.S. 1301, 1302, 98 S.Ct. 3058, 58 L.Ed.2d 9 (1978)(emphasis added).

ally applicable to criminal cases, including for non-confidential material relating to a news article); *Cuthbertson,* 630 F.2d at 146–47 (ruling that the confidentiality of the material at issue, in addition to its unpublished nature, bore not on the applicability of the reporter's privilege, but rather on the weight assigned when balancing the reporter's interest with that of the public's or defendant's).

While the Ninth Circuit and the District of Columbia Circuit have also applied the reporter's privilege in the criminal context, it has been limited to cases involving confidential material. *See United States v. Ahn,* 231 F.3d 26, 37 (D.C.Cir.2000)(affirming a district court's application of the reporter's privilege in a criminal case involving a confidential leak to a journalist); *Farr v. Pitchess,* 522 F.2d 464, 467–68 (9th Cir.1975)(interpreting *Branzburg* to "teach broadly enough to be applied to other civil or criminal judicial proceedings" and finding that it requires a balancing test when weighing the reporter's privilege against the public's interest in criminal trials).

Meanwhile, the Fourth, Fifth, Sixth, and Seventh Circuits have all rejected application of the reporter's privilege in criminal cases when non-confidential material is at stake. *See McKevitt,* 339 F.3d at 533 (concluding that "[w]hen the information in the reporter's possession does not come from a confidential source, it is difficult to see what possible bearing the First Amendment could have on the question of compelled disclosure," in addition to describing the First, Second, and Third Circuits as "skating on thin ice" in their expansive applications of the reporter's privilege); *Smith,* 135 F.3d at 972 (holding the reporter's privilege inapplicable in a criminal case when confidentiality is not at issue as "the existence of a confidential relationship that the law should foster is critical to the establishment of a privilege"); *In re Shain,* 978 F.2d 850, 852–53 (4th Cir.1992)(holding that, in the absence of confidentiality or "evidence of governmental harassment or bad faith," there is no reporter's privilege in criminal cases); *In re Grand Jury Proceedings: Storer Communications, Inc.,* 810 F.2d at 583 (rejecting the reporter's privilege in the case of a grand jury subpoena for non-confidential information as to do so "would have [the court] restructure the holding of the Supreme Court in *Branzburg* . . .").[15]

Lastly, the existence and applicability of the reporter's privilege in criminal cases involving non-confidential material remains unresolved in the Eighth and Tenth Circuits. *See In re Grand Jury Subpoena Duces Tecum,* 112 F.3d 910, 918 n. 8 (8th Cir.1997)(holding that, notwithstanding the precedent in civil practice, the question of the existence of the reporter's privilege remains open); *Silkwood,* 563 F.2d 433 (sole treatment of the reporter's privilege by the Tenth Circuit in civil cases).

The military judge did not attempt to reconcile the disparate treatment given the reporter's privilege by the federal courts, with the requirements of Mɪʟ. R. Eᴠɪᴅ. 501(a)(4). Rather, he adopted the position of three circuits without describing why the three cases upon which he relied demonstrate the privilege he recognized is common in the federal district courts. We hold that this was error. Before recognizing any privilege not enumerated in Mɪʟ. R. Eᴠɪᴅ. 501(a)(4), the rule requires a legal determination that the privilege asserted is commonly recognized under Fᴇᴅ.R.Eᴠɪᴅ. 501.

In determining whether the threshold requirement of the rule is satisfied by the case law discussed above, we are guided by two broad concepts. First, "[i]f a precedent of [the Supreme Court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme Court] the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shear-*

---

15. *See also United States Dep't of Educ. v. National Collegiate Athletic Association,* 481 F.3d 936, 938 (7th Cir.2007)(citing *Branzburg,* 408 U.S. at 665, 92 S.Ct. 2646, *University of Pennsylvania v. EEOC,* 493 U.S. 182, 201, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990), and *McKevitt,* 339 F.3d at 530)(observing in *dicta* that "there isn't even a reporter's privilege in federal cases. . . . The news media conduct investigations, and their ability to do so would be enhanced if they were permitted to conceal the identity of their sources from the government. But they are not.").

son/American Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).[16] Second, we are cognizant of the CAAF's caution in *Custis* regarding the province of policymakers to make adjustments to the law as it relates to privileges. 65 M.J. at 371. This language echoes that of the Supreme Court in *Branzburg*:

> At the federal level, Congress has freedom to determine whether a statutory newsman's privilege is necessary and desirable and to fashion standards and rules as narrow or broad as deemed necessary to deal with the evil discerned and, equally important, to refashion those rules as experience from time to time may dictate.

408 U.S. at 706, 92 S.Ct. 2646.

With these broad principals in mind, we conclude that there continues to be "substantial controversy" over the legitimacy and parameters of the reporter's privilege in the federal courts. *See Lee,* 413 F.3d at 57–58. In reaching this conclusion, we need not delineate precisely what is required in order to be "generally recognized." This is because we find it incongruous to characterize as generally recognized in criminal cases any privilege over non-confidential news material, when such a privilege is recognized in only four circuits, and when an equal number of circuit court opinions hold otherwise.

As did the Supreme Court in *Branzburg,* we recognize the important interest of maintaining a robust and free press. *Branzburg,* 408 U.S. at 681, 92 S.Ct. 2646. Nonetheless, in this case we decline to align ourselves, as did the military judge, with those few circuits recognizing the reporter's privilege for non-confidential material in criminal cases. This is because the privilege asserted is not commonly recognized, and because the policy considerations in those cases that do recognize it are inapposite to the facts before us.[17]

The CBS interview of the appellee occurred after he had been identified as a suspect and charged with, *inter alia,* voluntary manslaughter. There could have been no reasonable expectation by CBS other than that an interview of the appellee could result in recording material of relevance to his pending charges. Additionally, both CBS and the appellee anticipated the interview would be published. Thus, the appellee had no expectation the information he disclosed would be kept confidential. The appellee was represented by counsel during the interview, and admits that his participation was an effort to defend his reputation in the public media. Thus, the appellee is not the leaky federal agent of *Caporale,* or one of the potential fraud victim witnesses of *Cuthbertson. Caporale,* 806 F.2d at 1504; *United States v. Cuthbertson,* 511 F.Supp. 375, 377 (D.N.J.1981). He is an "indicted" accused who tendered his interview to *60 Minutes,* a well-known television news magazine, in an attempt to influence public opinion about the events that are the basis of the charges against him. We conclude that the facts here do not raise the public policy concerns that have attended other governmental action that can be argued as improperly burdening the press. *See The LaRouche Campaign,* 841 F.2d at 1182.

To summarize our analysis thus far, the Military Rules of Evidence do not specifically provide for a reporter's privilege. The Supreme Court's ruling in *Branzburg* directly controls whether there is a broad First Amendment reporter's privilege of overarching constitutional magnitude which must be recognized despite its omission from the Rules of Evidence. Having concluded the

---

**16.** "[U]nless we wish anarchy to prevail within the federal judicial system, a precedent of [the Supreme Court] must be followed by the lower federal courts no matter how misguided the judges of those circuits may think it to be." *Hutto v. Davis,* 454 U.S. 370, 375, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982).

**17.** Similarly persuasive in concluding that the reporter's privilege is not "generally recognized" is the fact that the reporter's privilege was not among the original nine specific privileges proposed by the Advisory Committee of the Judicial Conference of the United States and considered by Congress when crafting FED.R.EVID. 501. S.Rep. No. 93–1277. *See United States v. Gillock,* 445 U.S. 360, 367, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980)(finding that, while the absence of a privilege from those nine "standing alone would not compel the federal courts to refuse to recognize a privilege omitted from the proposal, it does suggest that the claimed privilege was not thought to be ... indelibly ensconced in our common law....").

*Branzburg* decision declined to recognize such a broadly based First Amendment reporter's privilege, we defer to the Supreme Court to overrule its decision, or for Congress or the President to adjust MIL. R. EVID. 501 to provide for such a privilege, if it is determined that it is necessary.[18] We then determined that the current state of federal common law is not sufficiently developed as to permit incorporating a reporter's privilege under MIL. R. EVID. 501(a)(4). As a result, we need not determine whether application of the reporter's privilege would be practicable or inconsistent with military law, or what standard would be applied in determining if the privilege is outweighed in a given case. MIL. R. EVID. 501(a)(4); *see United States v. Chisholm,* 59 M.J. 151, 152 (C.A.A.F.2003). Before concluding, however, we will address the military judge's holding that the DVDs are discoverable under R.C.M. 703.

■ The military judge concluded that DVDs 3A, 4A, and 8A were "directly relevant and material to the issue of the case." Record at 52. He also described the DVDs as "consistent with other evidence" and "in this respect, the evidence is cumulative and available from other sources." *Id.* Conversely, the military judge found that the DVDs were "professionally prepared video format," and the results were obtained by a skilled reporter who developed the facts. *Id.* He ultimately held that the outtakes met the requirements of R.C.M. 703. We agree with the military judge's ultimate conclusion that DVDs 3A, 4A, and 8A, meet the criteria of R.C.M. 703, and are discoverable. To the extent that his ruling can be construed as holding that the information on the DVDs is cumulative and not necessary, such a reading is in conflict with his final conclusion, and in any event it is erroneous.

We read the military judge's ruling as indicating that, upon juxtaposing the other available statements with the information on the DVDs, he concluded that any cumulative aspect or corroboration was overborne by the detailed presentation on the DVDs, rendering them on the whole, non-cumulative. By comparison, any confession must be corroborated to be admissible. *See United States v. Maio,* 34 M.J. 215, 218 (C.M.A.1992). Thus, corroboration alone does not make an admission wholly cumulative. *See United States v. Lee,* 28 M.J. 52, 55 (C.M.A.1989)(stating that the corroborative nature of evidence does not make it cumulative). Likewise, consistency with other statements, while providing some measure of duplication, need not, and in this case does not, render the highly detailed admissions on the DVDs to be cumulative with the written statements of the accused and other witnesses tendered; nor with the appellee's brief unsworn statement.[19] By comparison with the DVDs, these other statements are brief, less precise and incomplete. Some of them appear to have been written by the same person. Compare AE L at 673–77 (Statement of Corporal Salinas to Colonel (Col) Watt); AE L at 682–85 (Statement of Lance Corporal (LCpl) Tatum to Col Watt); AE L at 690–94 (Statement of LCpl Mendoza to Col Watt); and AE L at 707–11 (Statement of SSgt Wuterich to Col Watt). Having reviewed the record, we conclude that the information recorded on the DVDs is more detailed than other available information, includes information not yet disclosed in other sources of information, and it is presented in a manner which allows an assessment of the appellant's demeanor as he responds to questions. It is, therefore, not cumulative as anticipated by R.C.M. 703, and it is necessary.

---

18. "Achieving a better policy outcome—if what [CBS] urges is that—is a task for Congress, not the courts." *Hartford Underwriters Insurance Company v. Union Planters Bank, N.A.,* 530 U.S. 1, 13–14, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)(citing *Kawaauhau v. Geiger,* 523 U.S. 57, 64, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998); *United States v. Noland,* 517 U.S. 535, 541–42, n. 3, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996); *Union Bank v. Wolas,* 502 U.S. 151, 162, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991)).

19. The admissions of an accused represent the "most probative and damaging evidence that can be admitted against him" and, when captured on videotape, are "unique bits of evidence that are frozen at a particular place and time." *Arizona v. Fulminante,* 499 U.S. 279, 296–98, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *Cuthbertson,* 630 F.2d at 148.

"Relevant evidence is necessary when it is not cumulative and when it would contribute to a party's presentation of the case in some positive way on a matter in issue." R.C.M. 703(f)(1), Discussion. Having reviewed the outtakes and the other statements in the record, this court concludes that the admissions of the appellee on the DVDs include specific, material information, and a level of detail not present in any of the other statements tendered to the military judge, and that the DVDs contain such information that was not broadcast. Indeed, the military judge characterized the information as "highly material and relevant." Record at 53. The outtakes are, therefore, not cumulative and they are necessary because they bear directly on the observations, the mental impressions and the information possessed by the appellee, and others, as the events of 19 November 2005 unfolded. Since these DVDs are not protected from subpoena by a reporter's privilege under the facts of this case, we conclude that the military judge erred in applying such a privilege to material that he correctly concluded met the requirements of R.C.M. 703.

Finally, we note that CBS is not without equities in this matter. We do not lightly require disclosure of their newsgathering methods, editing technique, and other proprietary interests. While, under the facts of this case, CBS cannot be permitted to be the arbiter of what evidence is relevant, material, and potentially admissible in this case, we are sensitive to the impact of disclosure of the unaired outtakes. However, CBS has a ready avenue for relief. R.C.M. 703 provides that the military judge may modify the terms of a subpoena to make it less oppressive. Therefore, prior to requiring release of the DVDs, CBS may petition the military judge to conduct a hearing to determine the necessity for, and the terms of, any appropriate protective order. This is the proper avenue for resolving the competing interests in this case.

## Conclusion

The ruling of the military judge quashing the Government subpoena is vacated as to DVDs 3A, 4A, and 8A. The record is returned to the Judge Advocate General of the Navy for further proceedings not inconsistent with this opinion.

Senior Judges GEISER and VINCENT concur.

MAKSYM, Judge, joined by STOLASZ, Judge (concurring).

Substantively, I concur with the Chief Judge's resolution of this case, however I write separately to note my grave concern at the continued expansion of Article 62, Uniform Code of Military Justice, 10 U.S.C. § 862. While I echo the theme of the concurrence of Judge Perlak (joined by Booker, S.J. and Beal, J.), I take a less absolutist view. I am not of the opinion that an inviolable edifice between the fields of discovery and admissibility need be created, but nor do I blithely adhere to a view that a ruling on discovery is axiomatically comparable to a ruling on admissibility. The approach, in my opinion, should be to pragmatically judge the effects of a discovery ruling by a military judge on an *ad hoc* basis.

Unquestionably, as the Chief Judge observes, our court is empowered to review an interlocutory appeal by the United States of a trial judge's ruling excluding material evidence. Art. 62(a)(1)(B), UCMJ. This authority includes consideration of those pretrial rulings that have the "practical effect" of excluding material evidence. *See United States v. Brooks,* 145 F.3d 446, 454 (1st Cir.1998)(ruling on 18 U.S.C. § 3731, which Art. 62, UCMJ, was intended to parallel); *United States v. Lincoln,* 42 M.J. 315, 320 (C.A.A.F.1995).

A military judge's ruling quashing a Government subpoena can, under particular circumstances, have the "practical effect" of excluding evidence, but that will not always be the case. Before considering a Government appeal of such a ruling, this court should ensure that the effect of that ruling is the exclusion of evidence and the Government has no alternate method at its disposal to obtain the desired evidence. *See In re Grand Jury Empanelled,* 597 F.2d 851, 856 n. 8 (3d Cir.1979)("An order quashing a Subpoena duces tecum does not preclude the government from introducing the documents

if it can obtain them by some other legal method").

The facts before us reveal that the Government's subpoena for the CBS outtakes is the exclusive means by which the Government can obtain these materials and CBS has offered the Court nothing to contradict this fact. Thus, in this case, the "practical effect" of the military judge's rather draconian ruling is the exclusion of the outtakes sought by the Government. Notwithstanding the holding in this case, the military judge stands as the sole justiciar regulating the discovery process and the Government should not be enticed to appeal every loss on a discovery matter. *See United States v. Pomarleau,* 57 M.J. 351, 364 (C.A.A.F.2002).

PERLAK, Judge, joined by BOOKER, Senior Judge, and BEAL, Judge, (concurring in the result).

While we agree with the analysis and result that the majority arrives at on the question of the reporter's privilege in courts-martial, we write separately to express reservation as to the manner in which this appeal is before our court. In 1983, Congress authorized Government interlocutory appeals in limited circumstances through Article 62, Uniform Code of Military Justice, 10 U.S.C. § 862. We perceive that this case has expanded the narrow jurisdictional limitations imposed by Congress on such appeals. *See United States v. Wuterich,* 67 M.J. 63, 80–86 (C.A.A.F.2008)(Ryan and Erdmann, JJ., dissenting).

Our court has only so much jurisdiction as is conferred by statute. *See Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988).

Article 62, UCMJ, explicitly delimits the matters for which the Government may file an interlocutory appeal with this court to, *inter alia,* the ruling of a military judge "which *excludes* evidence that is substantial proof of a fact material in the proceeding." Art. 62, UCMJ (emphasis added). In the case before us, the military judge did not exclude the outtakes at issue, but rather ruled on the Government's ability to compel CBS to produce such evidence. Stated another way, this represents an appeal of a ruling on compulsory discoverability, not a ruling on admissibility at trial which excludes evidence. *See Montecatini Edison S.p.A v. E.I. du Pont de Nemours & Co.,* 434 F.2d 70, 72 (3d Cir.1970)(finding that "discoverability is not coterminous with admissibility"). The language of Article 62(a)(1)(B), UCMJ, does not contemplate an appeal unrelated to an order or ruling on the exclusion of evidence, as is the case in the present appeal. *See United States v. Browers,* 20 M.J. 356, 360 (C.M.A.1985)(noting that a ruling to deny a Government continuance is not appealable under Article 62, yet can be every bit as much an exclusion of evidence as a ruling suppressing evidence.)

Accordingly, although concurring in the majority's substantive resolution of the issues presented, we are troubled by the attenuation of the jurisdictional predicate of Article 62 to encompass questions of discoverability.