OPINION
NIEMEYER, Circuit Judge:
Four members of the press in South Carolina,[1] who have covered the highly publicized investigation and prosecution of certain members of the South Carolina legislature for accepting bribes to influence their vote on a pari-mutuel betting bill, assert a qualified privilege, grounded on the First Amendment, against being compelled to testify in the criminal trial of one of the legislators about matters learned by the reporters during newsgathering. When the reporters refused to comply with subpoenas to testify, the district judge found them in contempt, leading to this appeal. For the reasons given, we affirm.
After the FBI investigation of the South Carolina legislators, known as “Operation Lost Trust,” first became public in July 1990, each of the reporters interviewed South Carolina Senator Jefferson Marion Long, Jr'., separately and without witnesses. During the course of each interview, Senator Long claimed that he had received no more than $300 from Ronald L. Cobb, a registered lobbyist and federal undercover agent, as a legal donation to his reelection campaign. None of the reporters claims that the interview with Senator Long was confidential or that information obtained was given in confidence. The reporters published their interviews in news stories, purporting to quote Senator Long.
Over a year later, Senator Long was indicted for violating the Hobbs Act, 18 U.S.C. § 1951, by accepting $2,800 from Ronald Cobb to vote for the pari-mutuél bill. Assistant United States Attorney Alfred N. Bethea, Jr., determined that the information in the newspaper articles (that Senator Long claimed to have received no more than $300 from Cobb as a campaign contribution) was relevant to the question of his intent, particularly when it could be shown by a video tape that Long actually received $2,800. The covering up by Long *852 of the actual amount of the transfers at a time when he was not aware that a video tape had been made of him accepting $2,800 from Cobb arguably evidenced knowledge of wrongdoing, thereby tending to rebut any claim that the $2,800 might be a legitimate campaign contribution. To present,, evidence of Senator Long’s statements, Bethea decided to subpoena the reporters and have them testify for no more than five minutes each to confirm that Senator Long had in fact made the statements they had reported.
Pursuant to Department of Justice policy governing the issuance of subpoenas to the press, see 28 C.F.R. § 50.10, Bethea sought approval from superiors at the Department of Justice in Washington, explaining, “Our office is unaware of any non-media source by which we can obtain this information [the substance of Long’s statements to the press]. We have no knowledge that Long has made statements to anyone other than these reporters regarding what discussions occurred between him and Cobb.” When Bethea obtained approval from the Attorney General, he caused subpoenas to be served on the reporters.
The reporters moved to quash the subpoenas on the grounds that (1) the First Amendment affords news reporters a qualified privilege against being compelled to testify concerning newsgathering, and (2) the subpoenas had not been issued in compliance with the Department of Justice’s guidelines because the government failed to exhaust all reasonable alternative sources. At the hearing on the reporters’ motions, the government asserted that it had “sought every non-media source possible, trying to come up with the information that we desired to elicit from these, newspaper reporters. No non-media sources were found.” Emphasizing the absence of confidentiality in this case and noting that “the only parties that can testify to the validity of the quotes ... are the defendant and the reporters,” the district court denied the motions to quash. At trial the reporters refused to testify, again asserting a privilege. After a hearing, the trial judge found them in contempt of court, ordering them confined during each of the two days of trial.[2]
In affirming the district court, we hold that the incidental burden on the freedom of the press in the circumstances of this case does not require the invalidation of the subpoenas issued to the reporters, and absent evidence of governmental harassment or bad faith, the reporters have no privilege different from that of any other citizen not to testify about knowledge relevant to a criminal prosecution. Our decision is directed by the holdings of Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), and United States v. Steelhammer, 561 F.2d 539 (4th Cir.1977) (en banc).
In Branzburg the Supreme Court refused to recognize a reporter’s privilege not to testify in criminal prosecutions about relevant evidence known to the reporter, regardless of whether the information was obtained during newsgathering. The court stated, “We are asked to create [a privilege] by interpreting the First Amendment to grant newsmen a testimonial privilege that other citizens do not enjoy. This we decline to do.” Branzburg, 408 U.S. at 690, 92 S.Ct. at 2661. Reaffirming First Amendment protections of newsgathering, however, the Supreme Court cautioned that if information is sought from the press other than in good faith, a different issue is presented: “Official harassment of the press undertaken not for purposes of law enforcement but to disrupt a reporter’s relationship with his news sources would have no justification.” Id. at 707-08, 92 S.Ct. at 2670.
*853 Justice Powell, who joined in the Court’s opinion, wrote a separate concurring opinion to emphasize the Court’s admonishment against official harassment of the press and to add, “We do not hold ... that state and federal authorities are free to ‘annex’ the news media as ‘an investigative arm of government.’ ” Id. at 709, 92 S.Ct. at 2670 (Powell, J., concurring). Justice Powell concluded that when evidence is presented to question the good faith of a request for information from the press, a “proper balance” must be struck “between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct.” Id. at 710, 92 S.Ct. at 2670 (Powell, J., concurring).
In Steelhammer, we applied Branzburg to compel testimony from the press in a civil contempt trial, recognizing that only when evidence of harassment is presented do we balance the interests involved:
[T]he record fails to turn up even a scintilla of evidence that the reporters were subpoenaed to harass them or to embarrass their newsgathering abilities at any future public meetings that the miners might hold____
[I]n the balancing of interests suggested by Mr. Justice Powell [in Branzburg] ..., the absence of a claim of confidentiality and the lack of evidence of vindictiveness tip the scale to the conclusion that the district court was correct in requiring the reporters to testify.
United States v. Steelhammer, 539 F.2d 373, 376 (4th Cir.1976) (Winter, J., dissenting), adopted by the court en banc, 561 F.2d at 540.
In this case the reporters concede that neither Senator Long’s identity nor his statements during their interviews with him were confidential. Nor do they contend that the government seeks their testimony to harass them or otherwise seeks it in bad faith. The reporters instead argue that the government has a lesser interest in their testimony in this case than in Steel-hammer because the latter concerned eyewitness accounts of proscribed conduct alleged to constitute a contempt of court while in the present case the government already has video and audiotape of the defendant accepting a bribe. The reporters do not, however, assert that their testimony would be irrelevant or duplicative. Indeed, the government clearly retains an interest in the testimony to rebut any suggestions of innocent intent the tapes may have left open, by demonstrating Long’s knowledge of his guilt through his attempts to minimize what occurred before he became aware that he had been taped. We conclude, therefore, that the absence of confidentiality or vindictiveness in the facts of this case fatally undermines the reporters’ claim to a First Amendment privilege.
In addition to their First Amendment argument, the reporters contend that the subpoenas from which their contempt citations arose should have been quashed because the government failed to follow regulations promulgated by the Department of Justice concerning the compulsion of testimony by journalists. See 28 C.F.R. § 50.-10. In particular, they assert that the government failed to exhaust all reasonable alternative sources of the information sought from them. See 28 C.F.R. § 50.-10(b) & (f)(3).
This argument has little merit. There is no question that the government’s attorneys did follow the prescribed procedure for securing authorization from the Attorney General. Moreover, the government’s attorneys did make clear, both to their superiors within the Department of Justice and to the district court, that their long-running investigation had not uncovered any source for evidence that Senator Long had made false exculpatory statements other than the reporters subpoenaed.
In any event, the reporters’ attempt to invoke the Department of Justice’s regulation must fail in light of the Supreme Court’s holding in United States v. Caceres, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979). In that case the Court held that otherwise admissible evidence need not be excluded simply because it had been obtained in violation of a departmental policy with a purely internal enforcement mechanism. Id. at 756, 99 S.Ct. at 1473. This case presents closely analogous *854 facts. The Department of Justice’s regulation at issue in this case was promulgated without notice and comment under the Attorney General’s statutory power to “direct” the litigation of the United States and the conduct of its attorneys. 38 Fed.Reg. 29588 (1973) (citing 28 U.S.C. §§ 516, 519). It provides an administrative mechanism for enforcement, see 28 C.F.R. § 50.10(n), and expressly disclaims any intent “to create or recognize any legally enforceable right in any person.” Id. Like that at issue in Caceres, then, the regulation invoked by the reporters is of the kind to be enforced internally by a governmental department, and not by courts through exclusion of evidence.
In summary, we conclude that in the circumstances'of this ease the district court properly refused to quash the subpoenas issued and properly held the subpoenaed reporters in contempt for refusing to testify as requested.
AFFIRMED.

. Andrew Shain is a reporter for the Sun News, published in Myrtle Beach, South Carolina; Sid Gaulden and Schuyler Kropf are reporters for the Post-Courier, published in Charleston, South Carolina; Cindi Ross Scoppe is a reporter for The State, published in Columbia, South Carolina.

. Subsequently, the court directed a verdict in the underlying action for the defendant on one conspiracy count, and the jury found Long guilty of the remaining count for a Hobbs Act violation. This appeal remains a live controversy despite these events, however, because the district court has granted Long a new trial and the government asserts that if the case is retried it intends to subpoena the reporters again. Ap-pellee’s Brief 1. The issue is one that is "capable of repetition, yet evading review.” Nebraska Press Ass’n v. Stuart, 427 U.S. 539, 546-47, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683 (1976).