# CIRCUIT COURT OF CHESTERFIELD COUNTY

In re Multi-Jurisdictional
Grand Jury

May 14, 2004

BY JUDGE HERBERT C. GILL, JR.

On May 3, 2004, this matter came before the Court on Richmond Magazine's motion to quash a subpoena duces tecum requesting production "of any and all documents including electronic and paper, notes, and recordings concerning interviews with Raleigh Thomas Campbell." Richmond Magazine seeks to quash the subpoena on the grounds that it has a journalist's privilege against disclosure of such materials. After careful consideration of counsels' arguments and relevant case law, the Court denies the motion to quash and orders Richmond Magazine to comply with the subpoena duces tecum.

The Court agrees with counsel that the three-part balancing test enunciated by the Fourth Circuit Court of Appeals in *LaRouche v. National Broadcasting Co.*, 780 F.2d 1134 (4th Cir. 1986), is the proper test for the Court to apply in this matter. Before application of that test, however, it is valuable to examine the case law leading up to *LaRouche*.

The United States Supreme Court first addressed the issue of a journalist's privilege in *Branzburg v. Hayes*, 408 U.S. 665 (1972). *Branzburg* was four separate cases each of which involved a journalist who had been held in contempt for failure either to appear or to testify before grand juries investigating criminal conduct as to which the reporters had secured information in the process of preparing stories for publication in newspapers.

In unequivocally rejecting a privilege for reporters, the Supreme Court explained:

> Fair and effective law enforcement aimed at providing security for the person and property of the individual is a fundamental function of government, and the grand jury plays an important constitutionally mandated role in this process. On the records now before us, we perceive no basis for holding that the public interest in law enforcement and in ensuring effective grand jury proceedings is insufficient to override the consequential, but uncertain, burden on news gathering that is said to result from insisting that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial.

*Id.* at 690-91.

Justice Powell issued a concurring opinion "to emphasize what seem[ed] to [him] to be the limited nature of the Court's holding." *Id.* at 709 (Powell, J., concurring). Justice Powell observed that "if the newsman is called upon to give information bearing only a remote and tenuous relationship to the subject of the investigation, or if he has some other reason to believe that his testimony implicates confidential source without a legitimate need of law enforcement, he will have access to the court on a motion to quash and an appropriate protective order may be entered." *Id.* at 710. The claim of privilege "should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct." *Id.* In reinforcing his observation, Justice Powell referred to the majority's opinion:

> News gathering is not without its First Amendment protections, and grand jury investigations if instituted or conducted other than in good faith, would pose wholly different issues for resolution under the First Amendment. Official harassment of the press undertaken not for the purposes of law enforcement but to disrupt a reporter's relationship with his news source would have no justification. Grand juries are subject to judicial control and subpoenas to motions to quash. We do not expect courts will forget that grand juries must operate within the limits of the First Amendment as well as the Fifth.

*Id.* at 707-08.

The Fourth Circuit Court of Appeals first applied *Branzburg* in *United States v. Steelhammer*, 539 F.2d 373 (4th Cir. 1976). In *Steelhammer*, the

court reviewed an order of the district court committing news reporters to six months imprisonment for contempt of an order directing them to answer questions of the prosecution counsel when they were called as witnesses under subpoena in a civil contempt trial.

The majority opinion in *Steelhammer* vacated the news reporters' contempt judgments.. The majority construed *Branzburg* to require "a balancing of two vital considerations: protection of the public by extracting the truth versus protection of the public through maintenance of the free press." *Id.* at 375. The majority found that the first consideration could have been accomplished without obstructing the freedom of the press.

Judge Winter wrote a dissenting opinion that was subsequently adopted as the opinion of the Fourth Circuit, sitting en banc, in *United States v. Steelhammer*, 561 F.2d 539 (4th Cir. 1977). Judge Winter observed that the reporters had not "acquire[d] the information sought to be elicited from them on a confidential basis" and a "study of the record fail[ed] to turn up even a scintilla of evidence that the reporters were subpoenaed to harass them or to embarrass their news-gathering abilities at any future public meetings. . . ." 539 F.2d at 376. Therefore, "in the balancing of interests suggested by Mr. Justice Powell in his concurring opinion in *Branzburg v. Hayes*, the absence of a claim of confidentiality and the lack of evidence of vindictiveness tip the scale to the conclusion that the district court was correct in requiring the reporters to testify." *Id.*

The Fourth Circuit next considered the reportorial privilege in *LaRouche v. National Broadcasting Co.*, 780 F.2d 1134 (4th Cir. 1986), cert. denied, 479 U.S. 818 (1986). In a civil action for defamation, LaRouche moved to compel NBC to disclose confidential sources of a story that was asserted to be defamatory. In upholding the district court's refusal to compel NBC to disclose confidential sources, the Court of Appeals held that "in determining whether the journalist's privilege will protect the source in a given situation, it is necessary for the district court to balance the interests involved." *Id.* at 1139 (citing Justice Powell's concurring opinion in *Branzburg*). To aid in balancing those interests, the Fourth Circuit adopted a three part test: "(1) whether the information is relevant, (2) whether the information can be obtained by alternative means, and (3) whether there is a compelling interest in the information." *Id.* (citing *Miller v. Transamerican Press, Inc.*, 621 F.2d 721 (5th Cir. 1980)).

In 1992, the Fourth Circuit once again assessed the meaning of *Branzburg* in *In re Shain*, 978 F.2d 850 (4th Cir. 1992). In *Shain*, the Court of Appeals affirmed the contempt convictions of four reporters who refused to testify in a criminal trial about matters learned by them during their news-gathering activities. In affirming the convictions, the Court of Appeals held:

[T]he incidental burden on the freedom of the press in the circumstances of this case does not require the invalidation of the subpoenas issued to the reporters and absent evidence of governmental harassment or bad faith, the reporters have no privilege different from that of any other citizen not to testify about knowledge relevant to a criminal prosecution.

*Id.* at 852.

The Fourth Circuit explained that "[i]n *Steelhammer*, we applied *Branzburg* to compel testimony from the press in a civil contempt trial, recognizing that only when evidence of harassment is presented do we balance the interests involved." *Id.* at 853. After reviewing the record, the court found that the reporters had not asserted that the sources identity or the sources statements were confidential, nor had the reporters contended that the government sought their testimony to harass them. Therefore, "the absence of confidentiality or vindictiveness in the facts of this case fatally undermines the reporters' claim to a First Amendment privilege." *Id.*

In a concurrence by Judge Wilkinson, he declined to "embrace [the majority's] reasoning." *Id.* at 853 (Wilkinson, J., concurring). Under the majority's reasoning, "the interest of the news gatherers amounts to no more than an interest to remain free from state harassment [and] [b]ecause a subpoena can rarely be challenged successfully on that basis ... the reportorial interest, as defined by the majority, is not much of an interest at all." *Id.* Judge Wilkinson would require the balancing specified in *LaRouche* in circumstances other than when the record demonstrated the presence of harassment.

The above decisions demonstrate that the Fourth Circuit has recognized that *Branzburg* does not create a reportorial privilege, but reporters are entitled to protection under certain circumstances. Also, the survey shows that as a consequence of the decision in *Shain*, the predicate for conducting the balancing of factors identified in *LaRouche* is the circumstance in which both confidentiality of the source material and vexation or harassment is demonstrated by the record.

While the Supreme Court of Virginia has not adopted the *LaRouche* balancing test, this Court feels it is the appropriate test to apply in this matter. For examples of other circuits that have applied the *LaRouche* test, *see Clemente v. Clemente*, 56 Va. Cir. 530 (Arlington County 2001); *Philip Morris Co. v. American Broadcasting Co.*, 36 Va. Cir. 1 (Richmond 1995). Therefore, this Court must balance (1) whether the information sought is relevant, (2) whether the information sought can be obtained by alternate

means, and (3) whether there is a compelling interest in the information.

The information sought by the subpoena is relevant. Clearly the statements of a target of a murder investigation are relevant. Also, the information sought cannot be obtained by alternate means. Richmond Magazine argues that the information sought can be obtained by alternate means, in particular through the published article. However, the published article does not contain all the statements made by Mr. Campbell. The use of ellipses in two paragraphs of the article indicates that portions of Mr. Campbell's statement were truncated. Finally, the Court finds there is a compelling interest in the information. A grand jury is charged with the task of inquiring into the existence of possible criminal conduct. As such, there is a compelling interest in having "every man's evidence" at a grand jury proceeding. *Branzburg v. Hayes*, 408 U.S. 665, 688 (1972).

Richmond Magazine argues that "compelling [it] to reveal its work-product will have a chilling effect on the First Amendment and news-gathering in general since it will discourage communication with news reporters and similar persons." The Court disagrees with Richmond Magazine. Here, Mr. Campbell did not speak in confidence as the article clearly states Mr. Campbell "was on the record and had agreed to talk to a Richmond Magazine reporter. . . ." Mr. Campbell had no expectation of confidentiality as he understood that any statements he made to the reporter could be published. Therefore, to allow the grand jury to view Mr. Campbell's statements would not have a chilling effect on the First Amendment. The possibility that a person's statements to a news reporter could be revealed to a grand jury, when that person does not speak in confidence, does not discourage communication as Richmond Magazine suggests.

For the foregoing reasons, the Court overrules the motion to quash and orders Richmond Magazine to comply with the subpoena duces tecum.