C.
The facts surrounding the appointment of the Special Counsel in this case are widely known, but bear repetition in some detail here. On March 20, 2017, then-Federal Bureau of Investigation ("FBI") Director James Comey disclosed that the FBI was in the process of investigating Russian interference in the 2016 Presidential election and any potential links or coordination between the Russian government and President Trump's campaign organization. See Statement of FBI Director James B. Comey, House Permanent Select Committee on Intelligence, Hearing on Russian Active Measures Investigation (Mar. 20, 2017), https://www.fbi.gov/news. Shortly thereafter, on May 17, 2017, Acting Attorney General Rod J. Rosenstein (Rosenstein)[13] appointed Robert S. Mueller, III (Mueller) as Special Counsel pursuant to 28 U.S.C. §§ 509, 510, and 515 and authorized Mueller to "conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017," including as stated in ¶ (b):
(i) any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and
(ii) any matters that arose or may arise directly from the investigation; and
(iii) any other matters within the scope of 28 C.F.R. § 600.4(a).
Dep't of Justice, Office of Deputy Attorney General, Order No. 3915-2017, Appointment of Special Counsel To Investigate Russian Interference with the 2016 Presidential Election and Related Matters , ¶ (b) (May 17, 2017) (May 17 Appointment Order). The May 17 Appointment Order further authorized the Special Counsel "to prosecute federal crimes arising from the investigation of these matters" should the Special Counsel believe prosecution necessary and appropriate, and subject to the applicable regulations. Id. ¶ (c). Finally, the Acting Attorney General made "[s]ections 600.4 through 600.10 of Title 28 of the Code of Federal Regulations [ ] applicable to the Special Counsel" in this matter. Id. ¶ (d). In sum, ¶ (b), including ¶¶ (b)(i), (b)(ii), and (b)(iii), defines the scope of the Special Counsel's investigatory authority, ¶ (c) grants the Special Counsel authority to prosecute federal crimes "arising" from his investigation, and ¶ (d) subjects the Special Counsel to the applicable internal DOJ regulations.
Subsequently, on August 2, 2017, the Acting Attorney General issued a non-public memorandum concerning "[t]he Scope of Investigation and Definition of Authority" conferred on the Special Counsel. Memorandum from Rod Rosenstein to Robert S. Mueller, III 1 (Aug. 2, 2017) (August 2 Scope Memorandum).[14] The August *649 2 Scope Memorandum made clear that the May 17 Appointment Order "was worded categorically in order to permit its public release" and that the August 2 Scope Memorandum "provide[d] a more specific description" of the Special Counsel's authority. Id. With respect to the defendant, the August 2 Scope Memorandum identified several allegations, including allegations that the defendant:
[c]ommitted a crime or crimes by colluding with Russian government officials with respect to the Russian government's efforts to interfere with the 2016 election for President of the United States, in violation of United States law;
[c]ommitted a crime or crimes arising out of payments he received from the Ukrainian government before and during the tenure of President Viktor Yanukovych[.] Id. at 2.
The August 2 Scope Memorandum noted that these allegations against the defendant "were within the scope of [the Special Counsel's] investigation at the time of [his] appointment and are within the scope of the [Appointment] Order." Id. at 1.
Several months later, on February 22, 2018, the Special Counsel charged defendant[15] with, and a grand jury indicted defendant on (i) five counts of subscribing to false income tax returns, in violation of 26 U.S.C. § 7206(1) (Counts 1-5); (ii) four counts of failing to file reports of foreign bank accounts, in violation of 31 U.S.C. §§ 5314, 5322(a) (Counts 11-14); and (iii) nine counts bank fraud and conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1344, 1349 (Counts 24-32).[16] Specifically, the Superseding Indictment[17] alleges that defendant received millions of dollars in payments from his political consulting and lobbying work on behalf of Ukraine, the pro-Russia political party in Ukraine, and then-President Yanukovych and that defendant fraudulently hid those funds from U.S. authorities.
Defendant has now subsequently moved to dismiss the Superseding Indictment. The questions presented in defendant's motion, and addressed in this memorandum opinion are as follows:
(1) whether ¶ (b)(i) of the May 17 Appointment Order is a valid grant of jurisdiction pursuant to the Special Counsel *650 regulations and whether the Special Counsel's investigation falls within that grant of jurisdiction;
(2) whether ¶ (b)(ii) of the May 17 Appointment Order is a valid grant of jurisdiction pursuant to the Special Counsel regulations and whether the Special Counsel's investigation falls within that grant of jurisdiction; and
(3) whether a violation of the Special Counsel regulations would require dismissal of the Superseding Indictment.
These questions have been fully briefed and argued, and are separately addressed below.
II.
The first question is whether ¶ (b)(i) of the May 17 Appointment Order is a valid grant of jurisdiction pursuant to the Special Counsel regulations and whether the Special Counsel's investigation of defendant falls within that grant.[18] To begin with, defendant concedes that ¶ (b)(i) is a valid grant of jurisdiction. Specifically, defendant acknowledges that the Acting Attorney General acted consistently with the Special Counsel regulations when the Acting Attorney General authorized the Special Counsel to investigate the matters included in ¶ (b)(i) of the May 17 Appointment Order, namely "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump." May 17 Appointment Order ¶ (b)(i). Thus, the only issue is whether the Special Counsel's investigation and prosecution of the matters contained in the Superseding Indictment falls within the valid grant of jurisdiction contained in ¶ b(i) of the May 17 Appointment Order.
It does; the Special Counsel's investigation of defendant falls squarely within the jurisdiction outlined in ¶ b(i) of the May 17 Appointment Order, and because ¶ b(i) was an appropriate grant of authority, there is no basis for dismissal of the Superseding Indictment on this ground. Specifically, in the May 17 Appointment Order, the Acting Attorney General authorized the Special Counsel to investigate, among other things, "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump ...." May 17 Appointment Order ¶ (b)(i). It is undisputed that defendant is an "individual[ ] associated with the campaign of President Donald Trump[;]" indeed, defendant served as the chairman of President Donald Trump's campaign from March 2016 until August 2016. Moreover, the Special Counsel's investigation focused on potential links between defendant and the Russian government. In particular, the Special Counsel investigated defendant's political consulting work on behalf of, and receipt of substantial payments from, then-President Victor Yanukovych of the Ukraine and the Party of Regions, Yanukovych's pro-Russian political party in the Ukraine. See Superseding Indictment ¶¶ 10-11. To be sure, history is replete with evidence of the existing and longstanding antagonism between the Ukraine and Russia. Indeed, armed conflict in the eastern Ukraine is still underway.[19] Nonetheless, the fact that *651 the Yanukovych was a strongly pro-Russian President warranted the investigation here. The fact that the Russian government did not make payments to defendant directly is not determinative because the text of the May 17 Appointment Order authorizes investigation of "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump." May 17 Appointment Order ¶ (b)(i) (emphasis added).[20] Given that, as the Supreme Court has recognized, the term "any" "has an expansive meaning, that is, 'one or some indiscriminately of whatever kind[,]' "[21] the May 17 Appointment Order plainly authorizes the investigation of indirect links between Trump campaign officials and the Russian government in addition to more direct connections. In this regard, the May 17 Appointment Order authorizes the Special Counsel to investigate defendant's ties with individuals financially and politically supported by the Russian government, even where, as here, those individuals are not themselves members of the Russian government.
Defendant argues that the Special Counsel's investigation cannot possibly fall within ¶ b(i) of the May 17 Appointment Order because the crimes for which defendant was ultimately prosecuted, namely bank fraud and failure to file tax returns, do not involve election interference. At first glance, this argument appears to have some force. After all, defendant argues that the stated reason for the appointment of a Special Counsel was to investigate Russian interference with the 2016 Presidential election. But, upon further review, it becomes clear that this argument misunderstands the structure of the May 17 Appointment Order and the difference between the Special Counsel's investigative and prosecutorial authority. Paragraph b(i) describes the subject of the Special Counsel's investigative authority, namely "any links" between President Trump campaign officials and the Russian government. May 17 Appointment Order ¶ b(i). Paragraph (c) of the May 17 Appointment Order then describes the Special Counsel's prosecutorial authority, authorizing the Special Counsel "to prosecute federal crimes arising from these matters" if the Special Counsel "believes [prosecution] is necessary and appropriate." Id. ¶ (c). The May 17 Appointment Order does not limit the Special Counsel's prosecution authority to federal crimes concerning election interference or collusion; rather, the Special Counsel is authorized to prosecute federal crimes that arise out of his authorized investigation. And the crimes charged in the Superseding Indictment clearly arise out of the Special Counsel's investigation into the payments defendant allegedly received from Russian-backed leaders and pro-Russian political officials. Specifically, the Special Counsel "followed the money" paid by pro-Russian officials to defendant, and as a result, claimed to have found evidence that defendant was deliberately hiding these payments from U.S. authorities by disguising the payments as loans from offshore corporate entities and by *652 depositing the payments in offshore accounts and using those accounts to make payments to purchase and to make improvements to U.S. real estate. See Superseding Indictment ¶ 2. Based on this, the Special Counsel charged defendant with subscribing to false tax returns, failing to report foreign bank accounts, bank fraud, and conspiracy to commit bank fraud.
In sum, ¶ (b)(i) of the May 17 Appointment Order makes clear that the Special Counsel's investigation into the payments defendant received from Russian-backed Ukrainian officials was authorized because the investigation involved potential links between a Trump campaign official-the defendant-and the Russian government via the Russian-backed Ukrainian President. The May 17 Appointment Order also confirms that the Special Counsel was authorized to prosecute the crimes alleged in the Superseding Indictment because evidence of these alleged crimes was uncovered as part of the Special Counsel's aforementioned investigation. Given that defendant concedes that the Acting Attorney General appropriately exercised his authority in authorizing this jurisdiction in the May 17 Appointment Order, defendant's argument for dismissal of the Superseding Indictment is unpersuasive.
Even assuming, arguendo , that the Special Counsel's investigation and the subsequent prosecution of defendant were not authorized by the plain text of ¶ (b)(i) of the May 17 Appointment Order, the August 2 Scope Memorandum reflects that the Special Counsel was acting within his authority when he sought and obtained the Superseding Indictment against defendant in February 2018. The August 2 Scope Memorandum explains that the May 17 Appointment Order's description of the Special Counsel's authority was "worded categorically in order to permit its public release." August 2 Scope Memorandum at 1. The August 2 Scope Memorandum then goes on to provide additional detail regarding the Special Counsel's authority, explaining that allegations that defendant "[c]ommitted a crime or crimes arising out of payments he received from the Ukrainian government before and during the tenure of President Viktor Yanukovych" "are within the scope of the [Appointment] Order[.]" Id. at 2.
No interpretive gymnastics are necessary to determine that the investigation at issue here falls within this category of allegations described in the August 2 Scope Memorandum. Indeed, the Superseding Indictment alleges that defendant "generated tens of millions of dollars income as a result of [his] Ukraine work" and that from approximately 2006 through the present, defendant "engaged in a scheme to hide [that] income from United States authorities[.]" Superseding Indictment ¶ 2. Thus, the Superseding Indictment alleges that defendant committed a crime by engaging in a scheme to hide the payments he received from the Ukrainian government beginning in 2006, before the election of President Yanukovych, and continuing during President Yaunkovych's tenure and through the present. Accordingly, the plain text of the August 2 Scope Memorandum makes clear that the Special Counsel was authorized to conduct the investigation and to seek the Superseding Indictment at issue here.
In sum, the parties agree that the Acting Attorney General properly delegated to the Special Counsel the authority to investigate "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump ...." May 17 Appointment Order ¶ b(i). And it is clear from the text of the May 17 Appointment Order that the Special Counsel's investigation *653 into defendant, the former chairman of the Trump campaign, and in particular defendant's receipt of payments from Russian-backed officials in the Ukrainian government falls within this appropriately-delegated prosecutorial authority. To the extent the broadly-worded May 17 Appointment Order is lacking in clarity, the August 2 Scope Memorandum seeks to remedy this by stating explicitly that the Special Counsel is authorized to investigate defendant's payments from the Ukrainian government before and during the tenure of President Yanukovych. See August 2 Scope Memorandum at 1-2. Given that the Special Counsel was authorized to conduct the investigation and to prosecute the violations in the Superseding Indictment, dismissal of the Superseding Indictment is not warranted and defendant's motion must be denied on this ground alone.
III.
Given that the Special Counsel was authorized to investigate and to prosecute this matter pursuant to ¶ (b)(i) of the May 17 Appointment Order and the August 2 Scope Memorandum, that conclusion is dispositive and defendant's arguments with respect to ¶ (b)(ii) of the May 17 Appointment Order need not be addressed. But they are addressed for purposes of completeness.
Assuming, arguendo , that ¶ b(ii) of the May 17 Appointment Order is implicated, this question is a closer one. Paragraph (b)(ii) authorizes the Special Counsel to investigate "any matters that arose or may arise directly from the investigation." May 17 Appointment Order ¶ b(ii). Defendant contends this paragraph exceeds the Acting Attorney General's authority to establish the Special Counsel's jurisdiction pursuant to 28 C.F.R. § 600.4 because ¶ (b)(ii) confers unlimited additional, not original, jurisdiction without the required oversight of the Acting Attorney General. The Special Counsel opposes this argument, contending (i) that the line between original and additional jurisdiction is not as distinct as defendant suggests and (ii) that ¶ (b)(ii) cabins the Special Counsel's authority in a manner consistent with the Special Counsel regulations.
The question whether the Acting Attorney General complied with 28 C.F.R. § 600.4 when he granted the Special Counsel the authority described in ¶ b(ii) of the May 17 Appointment Order is close. On the one hand, as defendant correctly notes, the Special Counsel regulations distinguish between the Special Counsel's original and additional jurisdiction. With respect to the Special Counsel's original jurisdiction, § 600.4(a) requires that the Special Counsel "be provided with a specific factual statement of the matter to be investigated." 28 C.F.R. § 600.4(a). Pursuant to § 600.4(a), the Special Counsel's original jurisdiction "shall also include the authority to investigate and prosecute federal crimes committed in the course of, and with intent to interfere with, the Special Counsel's investigation...and to conduct appeals arising out of the matter being investigated and/or prosecuted." Id.
Section 600.4(b) establishes procedures by which the Special Counsel can gain additional jurisdiction beyond the original jurisdiction described in § 600.4(a). Specifically, if the Special Counsel concludes that he or she needs additional jurisdiction "to fully investigate and resolve the matters assigned, or to investigate new matters that come to light in the course of his or her investigation," the Special Counsel can consult with the Attorney General, and the Attorney General "will determine whether to include the additional matters within the Special Counsel's jurisdiction ...." Id. § 600.4(b).
*654 These provisions, taken together, suggest that a Special Counsel's original jurisdiction must be limited to (i) a specific factual statement of the matter to be investigated, (ii) federal crimes committed in the course of, and with intent to interfere with, the Special Counsel's investigation, and (iii) appeals arising out of the matter to be investigated. Cf. Chevron U.S.A. Inc. v. Echazabal , 536 U.S. 73, 80, 122 S.Ct. 2045, 153 L.Ed.2d 82 (2002) ("[E]xpressing one item of [an] associated group or series excludes another left unmentioned" (quoting United States v. Vonn , 535 U.S. 55, 65, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002) ). Accordingly, in defendant's view, any matter not falling within one of these three categories, including the matters described in ¶ (b)(ii) of the May 17 Appointment Order, necessarily constitutes additional jurisdiction and can only be assigned to the Special Counsel after consultation with, and approval by, the Attorney General.
On the other hand, the Special Counsel correctly notes that the text of § 600.4 neither expressly limits the scope of the Special Counsel's original jurisdiction, nor does it establish a strict boundary line between original and additional jurisdiction. And the Special Counsel contends that such sharp limitations and divisions would require the Special Counsel to consult the Attorney General with respect to every incremental action the Special Counsel anticipated taking as the facts developed in his or her investigation. In this regard, defendant's interpretation of § 600.4 would lead to results inconsistent with other sections of the Special Counsel's regulations, which make clear that the Special Counsel "shall not be subject to the day-to-day supervision of any official of the [DOJ]." Id. § 600.7(b).[22]
The government also argues that ¶ (b)(ii) of the May 17 Appointment Order is not, as defendant suggests, a "blank check" granting the Special Counsel unlimited and unreviewable authority. Def't. Mot. at 14. Indeed, the text of ¶ (b)(ii) circumscribes the Special Counsel's authority in two key ways: (i) by requiring that the matter at issue "arise from" the Special Counsel's investigation and (ii) by requiring that the matter arise "directly" from this investigation. May 17 Appointment Order ¶ (b)(ii). In this regard, the Special Counsel is not entitled to investigate and prosecute criminal conduct that is entirely incidental to, or disconnected from, the specific factual statement of matters to be investigated; rather, the Special Counsel is entitled to investigate only those matters that arise "in the usual or regular course or order" of investigating the matters included in the specific factual statement. Black's Law Dictionary 557 (10th ed. 2014).[23]
The Special Counsel regulations also make clear that the Special Counsel remains subject to the Attorney General's oversight following the Special Counsel's appointment, notwithstanding the specific grant of original jurisdiction. For example, the regulations require the Special Counsel (i) to "comply with the rules, regulations, procedures, practices, and policies of the [DOJ,]" 28 C.F.R. § 600.7(a), and (ii) to "notify the Attorney General of events *655 in the course of his or her investigation in conformity with the Departmental guidelines with respect to Urgent Reports[,]" id. § 600.8. And importantly, the Attorney General "may request that the Special Counsel provide an explanation for any investigative or prosecutorial step, and may after review conclude that the action is so inappropriate or unwarranted under established Departmental practices that it should not be pursued." Id. § 600.7(b). Should the Special Counsel violate any of these Departmental policies, the Attorney General is empowered to remove the special counsel. See id. § 600.7(d). In sum, because ¶ (b)(ii) itself and the regulations cabin the Special Counsel's authority, the Special Counsel argues that defendant's concern that ¶ (b)(ii) grants unlimited and unreviewable discretion to the Special Counsel is unfounded.
In the end, it is unnecessary to resolve the question whether ¶ (b)(ii) of the May 17 Appointment Order, which authorizes the Special Counsel to investigate "any matters that arose or may arise directly from the investigation," is an improper grant of original jurisdiction for two reasons. First, as described supra , the Special Counsel's investigation and prosecution of defendant is supported by ¶ (b)(i) of the May 17 Appointment Order. Second, the record makes clear that the Acting Attorney General has required the Special Counsel to consult with the Acting Attorney General before investigating matters that might fall under ¶ (b)(ii) of the May 17 Appointment Order. Specifically, the August 2 Scope Memorandum, consistent with 28 C.F.R. § 600.4, identifies specific factual matters to be investigated by the Special Counsel, including allegations that defendant "[c]omitted a crime or crimes by colluding with Russian government officials with respect to the Russian government's efforts to interfere with the 2016 election for President of the United States, in violation of United States law[.]" August 2 Scope Memorandum at 2. And notably, the August 2 Scope Memorandum limits the Special Counsel's ability to investigate "additional matters that otherwise may have arisen or may arise directly from the Investigation" by requiring the Special Counsel to "consult [the Acting Attorney General] for a determination of whether such matters should be within the scope of [the Special Counsel's] authority." Id. at 3. Thus, for the matters encompassed in ¶ (b)(ii) of the May 17 Appointment Order, namely "matters that arose or may arise directly from the investigation," the Acting Attorney General has required the Special Counsel to follow precisely the procedures the Special Counsel must follow should he wish to request additional jurisdiction. Put differently, it is immaterial whether ¶ (b)(ii) of the May 17 Appointment Order was actually a grant of additional jurisdiction because the Acting Attorney General has required the Special Counsel to follow the procedures for gaining additional jurisdiction should the Special Counsel wish to exercise the authority set out in ¶ (b)(ii).
In sum, whether ¶ (b)(ii) of the May 17 Appointment Order is a valid grant of original jurisdiction pursuant to 28 C.F.R. § 600.4(a) is a close question; defendant's argument that ¶ (b)(ii) grants overbroad original jurisdiction is not without some merit. In the end, however, it is unnecessary to resolve this question because the Acting Attorney General incorporated the regulations which required the Special Counsel to consult with the Acting Attorney General, in compliance with 28 C.F.R. § 600.4(b), in the event the Special Counsel sought to exercise the authority described in ¶ (b)(ii) of the May 17 Appointment Order.
IV.
Even assuming, arguendo , that the Acting Attorney General violated the Special *656 Counsel regulations by appointing the Special Counsel, this fact would nonetheless fail to support the remedy defendant seeks, namely dismissal of the Superseding Indictment, because (i) defendant is not entitled to enforce these regulations and (ii) the Special Counsel had the requisite constitutional and statutory authority to investigate and prosecute this matter.
To begin with, the plain text of the Special Counsel regulations makes pellucid that the regulations do not create any enforceable rights and as such, defendant's attempt to enforce the regulations must fail. Specifically, § 600.10, provides that the regulations "are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law or equity, by any person or entity, in any matter, civil, criminal, or administrative." 28 C.F.R. § 600.10. The Fourth Circuit has routinely declined to enforce provisions governing DOJ procedures where those provisions use language similar to the language at issue here. See, e.g. , In re Grand Jury Proceedings , 42 F.3d 876, 880 (4th Cir. 1994) (policy governing attorney subpoenas); In re Shain , 978 F.2d 850, 853 (4th Cir. 1992) (regulations governing journalist subpoenas); United States v. Howard , 590 F.2d 564, 567-68 (4th Cir. 1979) (Petite policy limiting dual prosecution).[24] Defendant is attempting to do precisely that which § 600.10 of the Special Counsel regulations and Fourth Circuit precedent proscribe, namely to enforce the Special Counsel regulations in a criminal proceeding. Because the plain text of the regulations prevents this, it is not appropriate to do so here.
In an attempt to avoid this conclusion, defendant characterizes his argument not as an effort to enforce rights under the regulations but rather as a challenge to the Special Counsel's legal authority. Specifically, defendant argues that a Special Counsel, appointed in a manner that violates the Special Counsel regulations, does not have the requisite legal authority to represent the United States in investigating and prosecuting this case. But this argument misidentifies the source of the Special Counsel's legal authority. The Special Counsel's legal authority is not grounded in the procedural regulations at issue here, but in the Constitution and in the statutes that vest the authority to conduct criminal litigation in the Attorney General and authorize the Attorney General to delegate these functions when necessary. And because the Special Counsel was appointed in a manner consistent with both these sources of legal authority, there is no basis for dismissal of the Superseding Indictment.
To begin with, the parties do not dispute that the Special Counsel's appointment was consistent with the Appointments Clause of the Constitution, which empowers Congress to vest appointment of "inferior officers," in the "president alone" or in "heads of departments." U.S. Const. art. II, § 2, cl. 2. In Morrison v. Olson , the Supreme Court concluded that the independent counsel there was an "inferior officer," not subject to appointment by the President and advice and consent of the Senate, because (i) the independent counsel was removable by the Attorney General and (ii) the independent counsel was "empowered...to perform only certain, *657 limited duties." 487 U.S. at 663, 671, 108 S.Ct. 2597. These same factors apply here-(i) the Special Counsel is removable by the Acting Attorney General, See 28 C.F.R. § 600.7(d), and (ii) the Special Counsel's authority is limited to that which the Acting Attorney General has authorized generally in the May 17 Appointment Order, and more specifically in the August 2 Scope Memorandum. In sum, the parties do not dispute, and Morrison makes clear, that the Special Counsel is an "inferior officer" and as such, can be appointed by a department head, in this case the Acting Attorney General, pursuant to Article II of the Constitution.[25]
The Acting Attorney General appointed the Special Counsel and authorized him to conduct the investigation at issue here in a manner consistent with statutory authority. Congress has vested in the Attorney General the power to conduct criminal litigation on behalf of the U.S. government. See 28 U.S.C. § 516. At the same time, Congress has authorized the Attorney General to appoint subordinates to assist in discharging these duties when necessary. See id. §§ 509, 510, 515, 533. In this regard, Congress enabled the Attorney General to "specially retain[ ]" attorneys "commissioned as special assistant to the Attorney General or special attorney" and to authorize these special assistants to "conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings." Id. § 515. Precisely this occurred here. The Acting Attorney General decided that it was necessary to delegate the criminal investigation at issue here to a "specially retained" attorney and as such, commissioned the Special Counsel and directed him to investigate generally "any links...between the Russian government and individuals associated with the campaign of President Donald Trump" and more specifically "any allegations that [defendant] committed a crime or crimes arising out of payments [defendant] received from the Ukrainian government before and during the tenure of President Viktor Yanukovych[.]" August 2 Scope Memorandum at 1-2. Accordingly, the Acting Attorney General acted within his statutory authority when he appointed the Special Counsel and as such, the Special Counsel had legal authority to investigate and prosecute this case.
In sum, because the Special Counsel's appointment was consistent with both constitutional requirements regarding appointment of officers and statutory requirements governing the authority to conduct criminal litigation on behalf of the United States, the Special Counsel had legal authority to investigate and to prosecute this matter and dismissal of the Superseding Indictment is not warranted.
This conclusion is consistent with Supreme Court precedent, which has made clear in the criminal context that a court need not enforce an agency's internal rules when the agency was "not required by the Constitution or by statute to adopt any particular procedures or rules[.]" United States v. Caceres , 440 U.S. 741, 749, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979). As described above, the constitutional and statutory provisions at issue here empower the Attorney General to appoint a special assistant and to authorize that special assistant to conduct criminal litigation on behalf of the U.S. government; these provisions do not require the Attorney General to follow specific procedures when delegating this power. See, e.g. , In re Persico , 522 F.2d 41, 66 (2d Cir. 1975) (noting that, to satisfy 28 U.S.C. § 515, the Attorney General's authorization of a specially retained attorney "need not be embodied in a single *658 written authorization, but may be implied from other writings, guidelines, practices, and oral directions transmitted through a chain of command within the department"); Infelice v. United States , 528 F.2d 204, 206 (7th Cir. 1975) (holding that a commission's failure to specify (i) the statute under which the special attorney was appointed, (ii) the names of the persons to be investigated, and (iii) the reason for the appointment was not fatal to a specially retained attorney's appointment). Thus, as in Caceres , the DOJ was "not required by the Constitution or by statute to adopt any particular procedures or rules [before appointing a Special Counsel]" and as such, the court is not required to enforce the internal procedures that the DOJ elected to establish. 440 U.S. at 749, 99 S.Ct. 1465.
The cases defendant relies on do not compel a contrary conclusion. Specifically, defendant relies chiefly on United States v. Providence Journal , 485 U.S. 693, 108 S.Ct. 1502, 99 L.Ed.2d 785 (1988), United States v. Nixon , 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), and their progeny, but these lines of cases do not require a result different from that reached here. In Providence Journal , a court-appointed prosecutor sought certiorari in the Supreme Court without the authorization of the Solicitor General. Providence Journal , 485 U.S. at 695-99, 108 S.Ct. 1502. The Supreme Court ultimately dismissed the writ of certiorari because 28 U.S.C. § 518(a) makes clear that unless the Attorney General specifically directs otherwise, only the Attorney General and the Solicitor General may "conduct and argue suits and appeals in the Supreme Court...in which the United States is interested." Id. at 699, 108 S.Ct. 1502. Because the court-appointed prosecutor was not the Attorney General or the Solicitor General, the Supreme Court held that the court-appointed prosecutor was not a party entitled to petition for certiorari and dismissed the writ for want of jurisdiction. Id.
Defendant argues that the special prosecutor in Providence Journal lacked authority because the special prosecutor was not appointed consistent with a DOJ regulation delegating to the Solicitor General the authority to represent the United States in the Supreme Court. But, contrary to defendant's assertions, the Supreme Court made clear in Providence Journal that it dismissed the writ of certiorari because "a federal statute [,]" namely 28 U.S.C. § 518(a), "deprive[d] the special prosecutor of the authority to pursue the litigation in this Court on behalf of the United States ...." Id. at 699 n.5, 108 S.Ct. 1502 (emphasis added). In this regard, Providence Journal is distinguishable from this case. Here, as described above, the Acting Attorney General's delegation of authority to the Special Counsel to investigate and to prosecute the crimes alleged in the Superseding Indictment is fully consistent with both pertinent constitutional and statutory authority. Because there is no federal statute depriving the Special Counsel here of the power to pursue litigation of this matter, Providence Journal does not demand dismissal of the Superseding Indictment.[26]
*659 Next, defendant cites to United States v. Nixon in support of his argument that special prosecutors, appointed inconsistently with internal DOJ regulations, lack authority to represent the United States in criminal litigation. Specifically, defendant relies on one line of dicta in Nixon in which the Supreme Court states that "[s]o long as this regulation is extant it has the force of law." Nixon , 418 U.S. at 695, 94 S.Ct. 3090. But Nixon is distinguishable for two reasons. First, the Nixon Court considered an issue different from the issue in this case; instead of deciding whether the special prosecutor there had legal authority to conduct criminal litigation, the Nixon Court considered whether the political question doctrine barred judicial review of conflicts between the special prosecutor and the President. Specifically, the Nixon Court had to determine whether the President's attempt to quash a special prosecutor's subpoena was an intrabranch conflict concerning delegation of authority or a case or controversy capable of resolution by the judiciary. As such, Nixon is inapposite inasmuch as the holding there did not adjudicate the legal authority of a special prosecutor.
Even assuming Nixon 's discussion of the political question doctrine was to govern here, Nixon is distinguishable because the regulation at issue there appointed a special prosecutor and specifically defined that special prosecutor's authority. See id. at 694-96, 94 S.Ct. 3090. In particular, the regulation at issue in Nixon vested the special prosecutor there with authority to control the course of investigations relating to:
all offenses arising out of the 1972 Presidential Election for which the Special Prosecutor deems it necessary and appropriate to assume responsibility, allegations involving the President, members of the White House staff, or Presidential appointees, and any other matters which he consents to have assigned to him by the Attorney General.
Id. at 694 n.8, 94 S.Ct. 3090 (quoting Fed. Reg. 30739, as amended by 38 Fed. Reg. 32805 ). Indeed, the regulation itself expressly delegated to the special prosecutor full authority with respect to "determining whether or not to contest the assertion of 'Executive Privilege' or any other testimonial privilege ...." 38 Fed. Reg. 30739, as amended by 38 Fed.Reg. 32805. The Nixon Court reasoned that because the Attorney General specifically delegated to the special prosecutor the authority to determine whether to contest the President's assertion of Executive Privilege, the Attorney General could not now reclaim that same authority without "amend[ing] or revok[ing *660 ] the regulation." Nixon , 418 U.S. at 696, 94 S.Ct. 3090. By contrast, defendant here is not attempting to enforce a regulation delegating specific authority to the Special Counsel; rather, defendant is attempting to enforce a more general regulation governing the process by which the DOJ allocates authority and divides responsibility internally. Given that the regulation at issue in this case is not a grant of specific authority to the Special Counsel, Nixon 's dicta requiring the Attorney General to revoke a specific grant of authority before reclaiming precisely that authority, is inapposite here.
In sum, even assuming defendant is correct that the Acting Attorney General violated the Special Counsel regulations when he appointed the Special Counsel here, that fact does not warrant dismissal of the Superseding Indictment. The Special Counsel regulations themselves make clear that the regulations do not "create any rights, substantive or procedural," and as such, the regulations are unenforceable "at law or equity, by any person or entity, in any matter, civil, criminal, or administrative." 28 C.F.R. § 600.10. Moreover, a violation of the Special Counsel regulations would not deprive the Special Counsel of the requisite legal authority to investigate and prosecute this matter because the Special Counsel's appointment was consistent with both the Constitution and relevant federal statutes, and the Constitution and federal statutes do not mandate that the Attorney General adopt any particular procedures prior to appointing a Special Counsel. Accordingly, dismissal of the Superseding Indictment is not appropriate here, and for this reason, as well as those described supra , defendant's motion must be denied.
V.
In sum, dismissal of the Superseding Indictment on the grounds urged by defendant is not warranted here. But that conclusion should not be read as approval of the practice of appointing Special Counsel to prosecute cases of alleged high-level misconduct. Here, we have a prosecution of a campaign official, not a government official, for acts that occurred well before the Presidential election. To be sure, it is plausible, indeed ultimately persuasive here, to argue that the investigation and prosecution has some relevance to the election which occurred months if not years after the alleged misconduct. But in the end, that fact does not warrant dismissal of the Superseding Indictment. The Constitution's system of checks and balances, reflected to some extent in the regulations at issue, are designed to ensure that no single individual or branch of government has plenary or absolute power. The appointment of special prosecutors has the potential to disrupt these checks and balances, and to inject a level of toxic partisanship into investigation of matters of public importance.[27] This case is a reminder that ultimately, our system of checks and balances and limitations on each branch's powers, although exquisitely designed, ultimately works only if people of virtue, sensitivity, and courage, not affected by the winds of public opinion, choose to work within the confines of the law. Let us hope that the people in charge of this prosecution, including the Special Counsel and the Assistant Attorney General, are such people. Although this case will *661 continue, those involved should be sensitive to the danger unleashed when political disagreements are transformed into partisan prosecutions.

On March 2, 2017, the Attorney General recused himself "from any existing or future investigations of any matters related in any way to the campaigns for President of the United States." Press Release, U.S. Dep't of Justice, Attorney General Sessions Statement on Recusal (Mar. 2, 2017), https://www.justice.gov/opa/pr/attorney-general-sessions-statement-recusal. Accordingly, the Deputy Attorney General became Acting Attorney General with respect to these investigations. See 28 C.F.R. § 600.1 (providing that where the Attorney General is recused, the Deputy Attorney General serves as Acting Attorney General).

Prior to the hearing, the Special Counsel submitted the August 2 Scope Memorandum in this record, albeit with significant redactions. In the course of the hearing on defendant's motion to dismiss the Superseding Indictment, the Special Counsel was ordered to produce an un-redacted copy of the August 2 Scope Memorandum. The Special Counsel complied with this directive, and a review of the un-redacted memorandum confirms that the only portions pertinent to the issues in this case are those already available in this public record and excerpted above.

Given the investigation's focus on President Trump's campaign, even a blind person can see that the true target of the Special Counsel's investigation is President Trump, not defendant, and that defendant's prosecution is part of that larger plan. Specifically, the charges against defendant are intended to induce defendant to cooperate with the Special Counsel by providing evidence against the President or other members of the campaign. Although these kinds of high-pressure prosecutorial tactics are neither uncommon nor illegal, they are distasteful.

The Special Counsel also sought and obtained an indictment in the District of Columbia charging defendant with a number of similar charges. That indictment is still pending and that trial is set for September 17, 2018. The Superseding Indictment here at issue was apparently sought in this district to accommodate venue requirements.

Defendant was initially charged with a co-defendant. On March 1, 2018, the government's motion to dismiss the charges against the co-defendant was granted without prejudice. Accordingly, the government subsequently filed the Superseding Indictment at issue here, including charges solely against defendant.

Defendant's principal argument relies on the assumption that the Special Counsel's jurisdiction to investigate and prosecute the crimes alleged against defendant in the Superseding Indictment must arise from ¶ (b)(ii) of the May 17 Appointment Order. But analysis properly begins with a determination as to whether the Special Counsel's investigation and prosecution of defendant falls within the grant of jurisdiction outlined in ¶ (b)(i) because that issue is dispositive.

See Michael Nienaber, Ukraine, Russia fail to agree on U.N. peacekeeping mission , Reuters (June 11, 2018) ("A ceasefire agreement that was signed in February 2015 in Minsk has failed to end the violence, with fighters from both sides violating the peace plan on a nearly daily basis.").

The wisdom of allowing all links between individuals associated with President Trump's campaign and the Russian government to be subject to investigation, irrespective of how stale those connections might be, is seriously in doubt. Nevertheless, the grant of investigatory authority is written broadly, and does capture the connections at issue in this case.

Dep't of Hous. & Urban Dev. v. Rucker , 535 U.S. 125, 131, 122 S.Ct. 1230, 152 L.Ed.2d 258 (2002).

Such limitations, divisions, and requirements for frequent consultation might ultimately be desirable, as they would ensure that the Special Counsel's work is carefully reviewed by democratically accountable leaders within the DOJ.

Although Special Counsel may be correct that the May 17 Appointment Order does not grant a blank check, it does grant the Special Counsel broad authority at which some observers might blanch. But whether a grant of broad authority to the Special Counsel is desirable is a different question from whether it is legal.

Other circuits have similarly declined to enforce provisions of this nature. See, e.g. , In re Grand Jury Subpoena (Miller) , 438 F.3d 1141, 1152-53 (D.C. Cir.) (press subpoena regulations and related USAM provision), cert. denied , 545 U.S. 1150, 125 S.Ct. 2977, 162 L.Ed.2d 906 (2005) ; United States v. Wilson , 413 F.3d 382, 389 (3d Cir. 2005) (Petite policy limiting dual prosecution); United States v. Lee , 274 F.3d 485, 492-93 (8th Cir.) (death penalty protocol), cert. denied , 537 U.S. 1000, 123 S.Ct. 513, 154 L.Ed.2d 394 (2002).

See supra note 5.

Defendant also cites to several cases arising under Providence Journal. Importantly, as in Providence Journal , the courts in these cases relied on the fact that a statute, not an internal DOJ regulation, deprived the prosecutor at issue of authority. For example, in Federal Election Commission v. NRA Political Victory Fund, 513 U.S. 88, 115 S.Ct. 537, 130 L.Ed.2d 439 (1994), the Court considered whether the FEC could petition for a writ of certiorari. Again, the Court dismissed the writ of certiorari, this time because the Solicitor General authorized the filing of the petition outside the "mandatory and jurisdictional" 90-day time limit established by statute in 28 U.S.C. § 2101(c). Similarly, in United States v. Fernandez , the Fourth Circuit considered whether the Attorney General could take an interlocutory appeal of a matter prosecuted by an independent counsel. The Fourth Circuit held that the Attorney General was not authorized to take an interlocutory appeal because when an independent counsel is prosecutor, "the [1978] Act removes from [the Attorney General's] purview [the considerations inherent to the interlocutory appeal]." United States v. Fernandez , 887 F.2d 465, 470 (4th Cir. 1989). Thus, dismissal of the appeal in that case was required because the 1078 Act, a statute, transferred the authority in question to the independent counsel. In sum, given that those cases focus on statutory, not regulatory authority, the remedies in those cases are not warranted here.
Neither does Larson v. Domestic & Foreign Commerce Corp. , 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949), also cited by defendant, require a result different from the result reached here. The Larson Court found that where "the officer's powers are limited by statute," the officer's "actions beyond those limitations are considered individual and not sovereign." Id. at 689, 69 S.Ct. 1457. In this regard, the Court again emphasized the statutory, and not regulatory limit, to the officer's authority, and as such, Larson supports the conclusion reached here.

A better mechanism for addressing concerns about election interference would be the creation of a bipartisan commission with subpoena power and the authority to investigate all issues related to alleged interference in the 2016 Presidential election. If crimes were uncovered during the course of the commission's investigation, those crimes could be referred to appropriate existing authorities within the DOJ.